■ JOHN R. LINTON et al., Respondents, v MUHAMMAD NAWAZ et al., Appellants. [879 NYS2d 82]—

Order, Supreme Court, New York County (Deborah A. Kaplan, J.), entered December 26, 2007, which denied defendants' motion for summary judgment dismissing the complaint on the ground that plaintiff John Linton did not sustain a serious injury within the meaning of Insurance Law § 5102 (d), modified, on the law, to grant the motion to the extent of dismissing plaintiff's claim that he sustained a medically determined injury of a nonpermanent nature that prevented him from performing substantially all of his usual and customary activities for 90 of the 180 days immediately following the accident, and otherwise affirmed, without costs.

This action arises out of a motor vehicle accident which occurred on August 29, 2002. Plaintiff, a pedestrian, was struck by a taxicab owned by defendant Chire Taxi, Inc. and operated by defendant Muhammad Nawaz. After striking plaintiff, the cab jumped the curb and, in the process, pushed plaintiff's body into a mailbox. Bleeding from his right knee and right ankle, plaintiff was transported by ambulance to Mt. Sinai Hospital, where he was examined and prescribed pain medication before being released. Plaintiff was unable to stand or walk in the days immediately following the accident, and experienced radiating neck and back pain.

Eight days after the accident, plaintiff consulted with Noel Fleischer, M.D., a neurologist, who examined him and made an initial diagnosis of traumatic cervical and lumbar radiculopathy and internal derangements of the left knee and right shoulder. MRIs prescribed by Dr. Fleischer revealed a tear of the right rotator cuff, a tear of the left medial meniscus, and multiple cervical disc herniations. Plaintiff continued to treat with Dr. Fleischer and to receive physical therapy. However, as of four years after the accident, Dr. Fleischer considered plaintiff's prognosis for full recovery to be "guarded" and found him to be "functionally impaired." Plaintiff missed 3½ months of work immediately after the accident.

Plaintiff alleged in his bill of particulars that as a result of the accident he sustained permanent injuries to his lumbosacral and cervical spines, his left knee and his right shoulder. He claimed that his injuries met the definition of "serious injury" in Insurance Law § 5102 because he suffered a permanent consequential limitation of use of a body organ or member and/or a significant limitation of a body function or system. He also stated that he had medically determined injuries of a nonpermanent nature that prevented him from performing his usual and daily activities for more than 90 of the first 180 days following the accident.

Defendants moved for summary judgment on the basis that plaintiff did not sustain a serious injury. Their motion relied on the affirmed reports of Audrey Eisenstadt, M.D., a radiologist, and Nicholas Stratigakis, M.D., an orthopedist who had performed an examination of plaintiff. In her report, Dr. Eisenstadt stated that she had reviewed MRI films taken within five weeks of the accident of plaintiff's right shoulder, left knee and cervical spine. She said that the MRI of the left knee revealed: "a small area of a bone contusion. The bone contusion should heal without sequela. The grade II mucoid degenerative signal change is as the name implies, an intrasubstance,

degenerative process without traumatic basis or causal relationship to the accident. Not even a joint effusion to suggest any significant trauma to this knee is noted. I agree . . . as to the presence of a contusion of the medial femoral condyle and medial tibial plateau. I agree with the presence of grade II linear signal change in the medial meniscus. However, no abnormality is seen in the medial collateral ligament. No joint effusion is noted. No post-traumatic changes are seen."

As to the cervical spine, Dr. Eisenstadt interpreted the MRI as containing "evidence of longstanding, pre-existing, degenerative disc disease." She stated that bony changes along the spine were "greater than six months in development and due to [the] extent are more likely years in origin. These changes could not have occurred in the time interval between examination and injury and clearly predate the accident." She acknowledged the presence of disc bulges but opined that they were chronic and degenerative in nature, and that they predated the accident.

Finally, Dr. Eisenstadt wrote that the MRI revealed a partial tear of the distal, supraspinatus tendon in the right shoulder but that the shoulder was otherwise normal. Although she stated that "[t]he etiology is uncertain based on this single study," she found that the "absence of a joint effusion is clearly indicative of the lack of significant recent trauma."

In his report, Dr. Stratigakis stated that plaintiff denied a history of injury to, or pain in, the spine, right shoulder or left knee. Dr. Stratigakis wrote that he examined plaintiff's neck, back, right shoulder and left knee. He compared the ranges of motion in the neck, back and shoulder to the normal ranges of motion and concluded that plaintiff had full range of motion in all planes. His examination of the knees revealed "flexion to 130 degrees, extension to 0 degrees and internal and external [sic] to 10 degrees." However, he did not state the normal ranges of motion for the knees. Moreover, Dr. Stratigakis failed to identify what objective tests he performed on plaintiff which led him to conclude that he had full ranges of motion in the spine, right shoulder and left knee. Dr. Stratigakis concluded that plaintiff had sustained sprains and strains to the injured body parts, all of which had resolved. He further found there to be no objective evidence of disability and no residual effects or permanency.

In opposition to the motion, plaintiff submitted his own affidavit, as well as the affirmation of Dr. Fleischer. Dr. Fleischer explained in his affirmation that plaintiff first came to see him on September 6, 2002, eight days after the accident. He related that plaintiff complained to him during that initial consultation

of injuries to his left knee and right shoulder, of neck pain radiating into his right shoulder and right arm with numbness. He also said he had lower back pain radiating to his left leg, and difficulty walking and sleeping. All of the complaints plaintiff made to Dr. Fleischer were related to the accident.

Dr. Fleischer stated that he examined plaintiff and found cervical and dorsal spasm and tenderness with impaired range of motion, especially on extension, lateral flexion and rotation. He also noted lumbosacral spasm and tenderness with impaired range of motion on all planes, as well as tenderness and swelling of the left knee, right shoulder and right ankle. Dr. Fleischer performed the straight leg raising test, which was positive bilaterally at 45 degrees. He found that plaintiff's gait and station were antalgic and that his heel/toe walk demonstrated weakness.

Dr. Fleischer further recounted that he prescribed physical therapy, MRI scans and an EMG test. The MRIs of plaintiff's right shoulder, left knee and cervical spine were taken in September 2002 and October 2002. He explained that the MRI of plaintiff's right shoulder revealed a tear of the rotator cuff, that the MRI of the left knee revealed a tear of the medial meniscus, and that the MRI of plaintiff's cervical spine showed multiple disc herniations at C3 through C7. The EMG, he noted, confirmed evidence of a right C6-C7 radiculopathy and bilateral carpal tunnel syndrome.

The affirmation detailed the subsequent history of plaintiff's treatment and recovery. In that regard, Dr. Fleischer stated that plaintiff continued to receive physical therapy, although the frequency of his sessions had decreased over time. He further stated that plaintiff continued to complain to him of intermittent headaches, dizziness and neck pain radiating towards his right shoulder and arm. He also complained that his lower back pain was becoming progressively worse. Indeed, Dr. Fleischer asserted that he had examined plaintiff at a recent office visit and that there was tenderness in the cervical and lumbar spines and an impaired range of motion. He also found tenderness in the right shoulder and left knee. The straight leg raising test was again positive.

Dr. Fleischer concluded by stating that plaintiff's prognosis for a full recovery is poor, and that his injuries are permanent. He further stated that

"It is my professional opinion, with a reasonable degree of medical certainty that given the findings of my exam, plaintiff, John Linton's, injuries were causally related to his motor vehicle accident of August 29, 2002 and consistent with the type of

injury that he sustained. Plaintiff, John Linton, requires further treatment, including additional physical therapy for pain management, and surgical debridement and/or other intervention. Further, it is very likely that plaintiff, John Linton, will develop arthritis as a result of his injuries.

"Based upon my examination of Mr. Linton, my review of his medical records, and the long duration of his pain and injuries, I can state with a reasonable degree of medical certainty that the foregoing injuries which were proximately and directly caused by the motor vehicle accident of August 29, 2002 are of a permanent nature. Mr. Linton has sustained a significant, consequential, permanent limitation and permanent impairment of his neck, back, left knee and right shoulder."

The motion court denied defendants' motion.* It held that defendants failed to meet their initial burden of submitting proof in admissible form demonstrating the absence of any material issues of fact and their entitlement to judgment as a matter of law. This, the court stated, was because Dr. Stratigakis failed to address the MRIs or to describe any of the objective medical tests that led him to conclude that plaintiff had full range of motion in each of the body parts at issue. While the court allowed that Dr. Eisenstadt's affirmed report may have cured Dr. Stratigakis's failure to address the MRIs, it held that her report did not cure his failure to identify the objective tests he utilized. The court further stated that while defendants' failure to meet their initial burden rendered any consideration of plaintiff's papers unnecessary, Dr. Fleischer's affirmation created a genuine issue of fact by stating that "[h]e found impaired range of motion in the spine and other deficits and permanent conditions arising from the injuries sustained by the plaintiff in the subject accident."

In a motor vehicle case, a defendant moving for summary judgment on the issue of whether the plaintiff sustained a serious injury has the initial burden of presenting competent evidence establishing that the injuries do not meet the threshold (*see Wadford v Gruz*, 35 AD3d 258 [2006]). The defendant cannot satisfy that burden if it presents the affirmation of a doctor which recites that the plaintiff has normal ranges of motion in the affected body parts but does not specify the objective tests

---

* Defendants' motion was initially granted upon plaintiff's default. Plaintiff moved to vacate the default and restore the action pursuant to CPLR 5015 (a) (1) and 2005 based on the existence of a reasonable excuse and a meritorious claim. Defendants did not contest the motion other than to reiterate their position that plaintiff did not sustain a serious injury and so they were entitled to summary judgment.

performed to arrive at that conclusion (see *Lamb v Rajinder*, 51 AD3d 430 [2008]). Here, Dr. Stratigakis failed to state what, if any, objective tests he utilized when examining plaintiff which led him to conclude that plaintiff had full ranges of motion in his cervical and lumbar spines, right shoulder and left knee and that the alleged injuries to those body parts had fully resolved. Accordingly, defendants failed to shift the burden to plaintiff to demonstrate that an issue of fact existed as to whether any of plaintiff's alleged injuries constituted a permanent consequential limitation of use of a body organ or member and/or a significant limitation of a body function or system.

Defendants did shift the burden, however, on the question of whether the injuries to plaintiff's cervical spine and left knee were caused by the accident. This they accomplished by submitting the affirmation of Dr. Eisenstadt, to the extent that it asserted that the abnormalities appearing on the MRIs of the cervical spine and left knee were degenerative in nature and preexisted the accident. However, they did not shift the burden on the question of whether the partial tear in plaintiff's right shoulder was precipitated by the accident. Her acknowledgment that the "etiology is uncertain" and her inability to attribute a reason for the tear rendered her opinion that it was not caused by the accident "too equivocal to satisfy defendant's prima facie burden to show that [the tear] was not caused by a traumatic event." (*Glynn v Hopkins*, 55 AD3d 498, 498 [2008].)

Nevertheless, the motion court properly denied summary judgment to defendants because plaintiff raised an issue of fact regarding causation. Specifically, Dr. Fleischer concluded that plaintiff's symptoms were related to the accident. This was not a speculative or conclusory opinion (compare *Diaz v New York Downtown Hosp.*, 99 NY2d 542, 544 [2002]). To the contrary, it was based on a full physical examination of plaintiff made within days of the onset of plaintiff's complaints of pain and other symptoms, which plaintiff told him ensued after he was involved in a traumatic accident. Clearly, this was sufficient to raise a triable issue as to whose medical opinion was worthy of greater weight—Dr. Fleischer's or Dr. Eisenstadt's (see *Etminan v Sasson*, 51 AD3d 623 [2008]; *Harper v St. Luke's Hosp.*, 224 AD2d 350, 351 [1996]).

Defendants argue that Dr. Fleischer's affirmation failed to create an issue of fact because it did not expressly address Dr. Eisenstadt's opinion that the left meniscal tear and cervical bulges and herniations were degenerative in nature. However, Dr. Fleischer's affirmation did reject Dr. Eisenstadt's opinion by

attributing the injuries to a different, yet altogether equally plausible, cause, that is, the accident. Moreover, Dr. Fleischer's affirmation is entitled to considerable weight here. Because Dr. Stratigakis's affirmation lacked any probative value, Dr. Fleischer's affirmation is the only competent evidence before us of plaintiff's injuries that is based on an actual physical examination.

The trilogy of cases decided in *Pommells v Perez* (4 NY3d 566 [2005]) governs this area of the law. An examination of those cases clearly shows that Dr. Fleischer's affidavit was sufficient to create an issue of fact as to causation.

In the second of the three *Pommells* cases, *Brown v Dunlap*, MRIs taken of the plaintiff's lumbar spine revealed disc herniations. The plaintiff's treating doctor diagnosed the plaintiff with a permanent spinal injury sustained as a direct result of a motor vehicle accident. However, in support of a motion for summary judgment, the defendants submitted the affirmation of a radiologist which stated that the spinal abnormalities were "chronic and degenerative in origin" (4 NY3d at 576). In opposition to the motion, the plaintiff provided the affirmation of his treating physician, which opined, "with a reasonable degree of medical certainty, that plaintiff's 'inability to move his spine (lower back and neck) to the full range of what is normal [constituted a] . . . definite severe and permanent injury' that was causally related to the accident" (*id.*). There is no indication in the opinion that the affirmation directly addressed the defendants' radiologist's opinion that the injuries were unrelated to the accident.

The Court of Appeals held that the defendants met their initial burden on the motion. However, the Court denied the motion, finding that plaintiff raised a triable issue of fact when his doctor identified measurements of loss of range of motion which led him to believe "that plaintiff suffered severe and permanent injuries as a result of the accident" (4 NY3d at 577). Addressing the defendants' position that the plaintiff's injury was the result of a preexisting condition, the Court stated that "there is only [the defendants' radiologist's] conclusory notation, itself insufficient to establish that plaintiff's pain might be chronic and unrelated to the accident. As opposed to the undisputed proof of plaintiff's contemporaneous, causally relevant kidney condition in *Pommells*, here even two of defendants' other doctors acknowledged that plaintiff's (relatively minor) injuries were caused by the car accident. On this record, plaintiff was not obliged to do more to overcome defendants' summary judgment motions" (4 NY3d at 577-578).

In this case, defendants' expert's opinion that plaintiff's knee and spinal injuries were degenerative in nature is no less "conclusory" than the *Brown* radiologist's statement that the spinal abnormalities in that case were "chronic and degenerative in origin." In addition, the plaintiff's doctor's opinion as to causation in *Brown*, like Dr. Fleischer's opinion here, did not appear to specifically rebut the radiologist's opinion as to causation.

The case before this Court contrasts with the first case in the *Pommells* trilogy, *Pommells v Perez*. In *Perez*, the plaintiff's doctor attributed plaintiff's symptoms to the motor vehicle accident and an unrelated kidney problem which manifested itself after the accident and which led to the removal of the kidney. The Court of Appeals held that the plaintiff failed to raise an issue of fact because his doctor acknowledged the kidney problem as a potential cause of the symptoms. In this case, there is no such statement by Dr. Fleischer that plaintiff's symptoms may have been caused by disc degeneration, that they were chronic or that they were caused by anything other than the accident.

Finally, in *Carrasco v Mendez*, the third case in the *Pommells* trilogy, the defendant submitted, among other things, reports from the doctor who treated the plaintiff immediately after the accident. These noted the existence of a degenerative condition that preexisted the accident and may have caused his symptoms. The plaintiff opposed the motion with the affidavit of a doctor who did not begin to treat the plaintiff until one year after the accident, and which failed to address the previous treating physician's observation of a preexisting condition. The Court found that summary judgment was properly granted to the defendant because he presented *"persuasive* evidence that plaintiff's alleged pain and injuries were related to a preexisting condition" (4 NY3d at 580 [emphasis added]), and plaintiff failed to refute it. In this case, Dr. Eisenstadt's opinion, standing alone, that plaintiff had a preexisting condition, is not "persuasive." This is especially true in the face of Dr. Fleischer's equally, if not more weighty, opinion, that the injuries were caused by the accident.

The cases cited by the dissent are on their face inapposite and are all readily distinguishable. Unlike this case, the evidence presented by the defendants in those cases of a preexisting injury was "persuasive" (*Pommells*, 4 NY3d at 580). Also unlike here, the plaintiffs' experts in those cases showed no reliable basis for opining that it was just as likely that the motor vehicle accident caused the injuries.

Reviewing the dissent's cases individually, this is clear. In

*Valentin v Pomilla* (59 AD3d 184 [2009]), the defendants' motion for summary judgment relied on an affirmation from a radiologist stating that the plaintiff's back and knee injuries preexisted the accident. The defendants also introduced evidence that the plaintiff's own doctors reported after their initial evaluations that his meniscal tears were degenerative in nature. In opposition, the plaintiff submitted an affidavit by his chiropractor stating that the plaintiff had limited motion in his lumbar and cervical spines which was related to the accident. This Court held that the plaintiff failed to raise an issue of fact because the chiropractor's opinion was not based on an examination of the plaintiff made contemporaneously with the accident, but rather on an examination which occurred two months thereafter, when the link between the trauma and the reported symptoms would not have been as readily discernable. Here, of course, Dr. Fleischer examined plaintiff within eight days of the accident, when the trauma was still fresh. Accordingly, his ability to link plaintiff's symptoms to the accident was far superior to the ability of the doctor in *Valentin*. The complaint in *Shinn v Catanzaro* (1 AD3d 195 [2003]), also relied on by the dissent, was similarly dismissed because the plaintiff's expert's opinion that a motor vehicle accident caused his herniated discs was based on an examination performed $4^{1}/_{2}$ years after the accident occurred.

In *Style v Joseph* (32 AD3d 212 [2006]), it was not disputed that the plaintiff had been in two prior accidents, in which she suffered debilitating injuries to the same body parts allegedly injured in the subject accident. Three of the four experts who submitted affirmations on behalf of the plaintiff in opposition to the defendant's motion for summary judgment ignored this fact. The expert who did address it acknowledged that the plaintiff experienced neck and back pain prior to the accident but stated in conclusory fashion that the plaintiff was improving from those injuries at the time of the latest accident and that the latest accident exacerbated those injuries. This Court found this to be insufficient to raise a triable issue of fact. Here, plaintiff reports no prior medical history. To the contrary, he claims that he had no symptoms before the subject accident.

*Becerril v Sol Cab Corp.* (50 AD3d 261 [2008]) and *Brewster v FTM Servo, Corp.* (44 AD3d 351 [2007]) also involved plaintiffs who were undisputedly involved in a prior accident in which the same body parts were injured but failed to address why the prior accidents were not a possible cause of their current symptoms.

All of these cases are consistent with the notion introduced in

*Pommells v Perez* (4 NY3d 566 [2005], *supra*). Again, *Pommells* stands for the proposition that where the defendant submits "persuasive" evidence of a preexisting injury and the plaintiff's doctor has no reliable basis for linking the symptoms to the accident, an issue of fact cannot be created by the plaintiff's doctor's simply repeating the mantra that the injuries were caused by the accident.

The instant matter is not such a case. Defendants' sole competent evidence in favor of summary judgment was a doctor's opinion that plaintiff's injuries preexisted the accident. Plaintiff submitted the affirmation of a treating physician, based on a physical examination performed within days of the accident, opining that the injuries were caused by the accident. There is no basis on this record to afford more weight to defendants' expert's opinion and there are no "magic words" which plaintiff's expert was required to utter to create an issue of fact. If anything, plaintiff's expert's opinion is entitled to more weight. Moreover, that opinion constituted an unmistakable rejection of defendants' expert's theory.

Finally, we hold that defendants did establish their entitlement to summary judgment dismissing plaintiff's 90/180-day claim based upon the evidence that the period between the accident and plaintiff's return to work on a part-time basis was only 79 days. Plaintiff's reduced work schedule fails to raise a triable issue of fact as to whether he sustained a 90/180-day injury (*see Cartha v Quinn*, 50 AD3d 530 [2008]). Concur— Mazzarelli, J.P., Acosta and Renwick, JJ.

Catterson and McGuire, JJ., dissent in part in a memorandum by McGuire, J., as follows: I agree with the majority that plaintiffs' claim under the 90/180-day provision of Insurance Law § 5102 (d) must be dismissed. However, I would also dismiss the claims premised on injuries to plaintiff John R. Linton's spine and left knee.

Plaintiffs allege that John Linton sustained injuries to his spine, left knee and right shoulder when he was struck by a vehicle driven by defendant Muhammad Nawaz and owned by defendant Chire Taxi, Inc. In support of their motion for summary judgment dismissing the complaint, defendants submitted, among other things, the affirmation of a radiologist who reviewed MRI films of John Linton's left knee and spine taken between five and eight weeks after the accident. The radiologist affirmed that, with respect to the left knee, "[t]here is a grade II degenerative signal change seen in the posterior horn of the medial meniscus." She concluded that "[t]he grade II mucoid degenerative signal change is as the name implies, an intrasub-

stance, degenerative process without traumatic basis or causal relationship to the accident." With respect to the spine, the radiologist affirmed that "[d]egeneration of all the cervical intervertebral discs is noted." She found that the films: "reveal[ ] evidence of longstanding, pre-existing, degenerative disc disease. There is osteophyte formation, discogenic ridging, endplate signal change and uncinate joint hypertrophy seen. These bony changes are greater than six months in development and due to [the] extent are more likely years in origin. These changes could not have occurred in the time interval between examination and injury and clearly predate the accident. There is disc degeneration throughout the cervical spine. This drying out and loss of disc substance is also longstanding, chronic, and pre-existing. Disc bulging is seen. Bulging is not traumatic but degeneratively induced, related to ligamentous laxity. No ossesous, ligamentous, or intervertebral disc abnormalities are seen attributable to the . . . accident." Supreme Court denied defendants' motion in its entirety, and this appeal ensued.

The disposition of this appeal turns on the summary judgment standards regarding a claim of serious injury where a defendant has submitted on its motion for summary judgment evidence that the plaintiff suffered from a preexisting condition. We have repeatedly held that where the defendant submits evidence in admissible form indicating that the plaintiff suffered from a preexisting degenerative condition in the area of the body that the plaintiff claims was injured as a result of the motor vehicle accident giving rise to the action, the defendant has made a prima facie showing of entitlement to judgment as a matter of law dismissing the complaint on the ground that the accident was not a proximate cause of the plaintiff's injuries. To raise a triable issue of fact and withstand summary judgment in opposition to such a prima facie showing, it is incumbent upon the plaintiff to submit evidence specifically addressing the defendant's evidence that the plaintiff suffered from a preexisting degenerative condition.

*Valentin v Pomilla* (59 AD3d 184 [2009]), recently decided by this Court, highlights these principles. In *Valentin*, we stated that:

"Defendants established prima facie that plaintiff did not sustain a serious injury within the meaning of Insurance Law § 5102 (d) by submitting a radiologist's affirmed report that plaintiff's MRI films revealed evidence of degenerative disc disease predating the accident and no evidence of post-traumatic injury to the disc structures (*see Perez v Hilarion*, 36 AD3d 536,

537 [2007]). In opposition, plaintiff failed to raise an inference that his injury was caused by the accident (*see Diaz v Anasco,* 38 AD3d 295 [2007]) *by not refuting defendants' evidence of a preexisting degenerative condition of the spine.* Missing from all of plaintiff's submissions is any mention of the congenital defect at the S1 vertebral level and degenerative condition of plaintiff's lumbar spine reported by Dr. Eisenstadt or the preexisting degenerative changes in his right knee and degenerative meniscal tears in both posterior horns of both menisci reported by plaintiff's own experts, Drs. Lubin and Rose, in their initial evaluation of plaintiff's right knee shortly after the accident (*see Pommells v Perez,* 4 NY3d 566, 580 [2005]).

"With regard to his claim that the evidence submitted by him was sufficient to raise an inference that he suffered injuries that were caused by the accident, plaintiff asserts that his MRIs of the cervical and lumbar spine revealed disc herniation at L4-5 and L5-S1 and disc bulging at C4-C5, and that EMGs revealed L5-S1 radiculopathy. However, '[a] herniated disc, by itself, is insufficient to constitute a "serious injury"; rather, to constitute such an injury, a herniated disc must be accompanied by objective evidence of the extent of alleged physical limitations resulting from the herniated disc' (*Onishi v N & B Taxi, Inc.,* 51 AD3d 594, 595 [2008]). Plaintiff also contends that the MRI of his right knee revealed a medial meniscal tear, for which he ultimately underwent arthroscopy. *Again, he makes no mention of the degenerative nature of that condition.*

"In addition, plaintiff argues that his chiropractor Dr. Zeren's affidavit set forth objective quantified evidence of the degree of limitation and permanency of the injuries sustained by him. Notably, he contends Dr. Zeren found positive straight-leg testing during plaintiff's May 30, 2007 examination (*see Brown v Achy,* 9 AD3d 30, 31-32 [2004]), and that plaintiff was also noted to have decreased limitation of motion of the lumbar and cervical spine (*see Toure v Avis Rent A Car Sys.,* 98 NY2d 345, 353 [2002]).

"However, plaintiff's reliance on Dr. Zeren's affidavit is misplaced. Although he presumably saw plaintiff just days after the accident, Dr. Zeren failed to provide documentation regarding *that* visit or any contemporaneous evidence of limitations. In this regard, there were no contemporaneous limitations shown regarding the accident—at most, some limitations were purportedly measured by Dr. Hausknecht two months after the accident (*see Thompson v Abbasi,* 15 AD3d 95, 98 [2005]) . . . Even if Dr. Hausknecht's report was considered contemporaneous, the limitations concerned only lateral flexion of the cervical

spine and forward flexion of the lumbar spine, and were minor. In addition, *Dr. Hausknecht failed to address whether plaintiff's condition was causally related to the motor vehicle accident at issue.*

"The most significant flaw in plaintiff's arguments is his failure to address causation. 'To recover damages for noneconomic loss related to personal injury allegedly sustained in a motor vehicle accident, the plaintiff is required to present nonconclusory expert evidence sufficient to support a finding not only that the alleged injury is "serious" within the meaning of Insurance Law § 5102 (d), but also that the injury was causally related to the accident. Absent an explanation of the basis for concluding that the injury was caused by the accident, as opposed to other possibilities evidenced in the record, an expert's conclusion that plaintiff's condition is causally related to the subject accident is mere speculation, insufficient to support a finding that such a causal link exists' (*Diaz v Anasco*, 38 AD3d at 295-296 [internal quotation marks and citations omitted]).

"Here, not only did plaintiff's experts fail to refute defendants' evidence of a preexisting congenital and degenerative condition of the spine, his own doctors reported a degenerative condition of the right knee. *Dr. Rose's failure even to mention, let alone explain, why he ruled out degenerative changes as the cause of plaintiff's knee and spinal injuries rendered his opinion that they were caused by the accident speculative* (*see Gorden v Tibulcio*, 50 AD3d 460, 464 [2008]). Consequently, there is no objective basis for concluding that the present physical limitations and continuing pain are attributable to the subject accident rather than to the degenerative condition (*see Jimenez v Rojas*, 26 AD3d 256, 257 [2006]). In *Pommells v Perez* (4 NY3d 566 [2005], *supra*), where, as here, there was persuasive evidence that the plaintiff's alleged pain and injuries were related to preexisting degenerative conditions, the Court held that plaintiff had the burden of coming forward with evidence addressing the defendants' claimed lack of causation. In the absence of such evidence, the defendants are entitled to summary dismissal of the complaint" (59 AD3d at 184-186 [emphasis added]).

*Valentin* is hardly an aberration from our "serious injury" jurisprudence. In *Becerril v Sol Cab Corp.* (50 AD3d 261, 261-262 [2008]), another panel of this Court determined that:

"Defendants established a prima facie entitlement to summary judgment by submitting . . . the affirmed report of a radiologist who opined that plaintiff's MRI films revealed degenerative disc disease, and no evidence of post-traumatic injury to the

disc structures (*see Montgomery v Pena*, 19 AD3d 288, 289 [2005]). Defendants also submitted plaintiff's deposition testimony, where he stated that he missed no work as a result of his accident.

"In opposition, plaintiffs failed to raise a triable issue of fact as to whether he sustained a serious injury. Although plaintiff submitted an affirmed report from his treating chiropractor detailing the objective testing employed during plaintiff's examination and revealing limited ranges of motion, *no adequate explanation was provided that plaintiff's injuries were caused by the subject accident* (*see Style v Joseph*, 32 AD3d 212, 215 [2006]). Notably, plaintiff conceded at his deposition that he sustained injuries to his neck and back in a prior accident, and an MRI conducted shortly after the subject accident showed degenerative disc disease. In these circumstances, *it was incumbent upon plaintiff to present proof addressing the asserted lack of causation* (*see Brewster v FTM Servo, Corp.*, 44 AD3d 351, 352 [2007])." (Emphasis added.)

This Court's decision in *Brewster v FTM Servo, Corp.* (44 AD3d 351 [2007]), cited by the Court in *Becerril*, is also instructive as to the law in this Department regarding summary judgment standards in no-fault cases. In *Brewster*, we noted that: "Brewster conceded at his deposition that he had sustained injuries to his neck, back and shoulder in a prior automobile accident. Once a defendant has presented evidence of a preexisting injury, even in the form of an admission made at a deposition (*see Alexander v Garcia*, 40 AD3d 274 [2007]), it is incumbent upon the plaintiff to present proof to meet the defendant's asserted lack of causation (*see Baez v Rahamatali*, 6 NY3d 868 [2006]; *Pommells v Perez*, 4 NY3d 566, 574 [2005]). *Brewster's submissions totally ignored the effect of his previous mishap on the purported symptoms caused by the latest accident.* The fact that [defendant's] expert discerned some minor loss of motion in Brewster's lumbar spine is irrelevant where the objective tests performed by this physician were negative, and Brewster had testified to a preexisting injury in that part of his body (*see Style v Joseph*, 32 AD3d 212, 214 [2006]; *Montgomery v Pena*, 19 AD3d 288, 289-290 [2005])" (44 AD3d at 352 [emphasis added]).

Another decision out of this Court that demonstrates the principles discussed above is *Shinn v Catanzaro* (1 AD3d 195 [2003]). In *Shinn*, the plaintiffs were injured when the car they were traveling in was struck by a vehicle driven by the defendant. The plaintiffs commenced an action against the defendant and the defendant sought summary judgment dismissing the

complaint. With respect to the claims of one of the plaintiffs, James Shinn, the defendant submitted the affirmation of a radiologist who reviewed an MRI film of James Shinn's spine that was taken two months after the accident. The radiologist "noted a 'dessication or drying out' of disc material at the L4-5 level, and a disc herniation at the L3-4 level," and "concluded that the disc abnormalities were not traumatically induced, but rather were the result of preexisting degenerative conditions" (*id.* at 196).

In reversing an order of Supreme Court denying the defendants' motion to dismiss the complaint in its entirety, we determined with respect to the claims of James Shinn that the radiologist's "report reveals that [his] disc abnormalities were the result of preexisting degenerative conditions, and thus not causally related to the February 1997 accident. This evidence, submitted in proper form, was sufficient to establish prima facie entitlement to dismissal for failure to meet the serious injury threshold" (*id.* at 197). While we found that James Shinn's expert's affirmation demonstrated that he suffered from disc herniations in his cervical spine and had a 40% restriction of range of motion of the cervical spine, we concluded that: "[w]hat plaintiffs' submissions fail to do . . . is demonstrate that the cervical disc herniations or any other serious injury suffered by [James Shinn] are causally related to the . . . accident. The record shows that after the accident, [James Shinn] did not miss any work except a few hours for medical appointments. [He] received chiropractic treatment for approximately nine months after the accident, and, according to the unsworn chiropractor's reports from 1997, [he] had some limitations of range of motion in the cervical and lumbar spine. However, [James Shinn] was [not] diagnosed with cervical disc herniations [at that time]. Moreover, despite [the] 1997 MRI showing James Shinn as having herniated and bulging discs in his lumbar spine, *plaintiffs failed to address defendant's medical evidence attributing those injuries to preexisting degenerative conditions* (*see Lorthe v Adeyeye*, 306 AD2d 252 [2d Dept 2003])" (*id.* at 198 [emphasis added]).

Because defendant's evidence established that John Linton had preexisting degenerative injuries to his left knee and spine, defendants made a prima facie showing of entitlement to summary judgment with respect to those claims (*see Valentin*, 59 AD3d at 184; *Becerril*, 50 AD3d at 261-262; *Brewster*, 44 AD3d at 352; *Shinn*, 1 AD3d at 198). In opposition, plaintiffs failed to raise a triable issue of fact with respect to their claims premised on injuries to John Linton's left knee and spine. Their expert

failed to address how John Linton's "current medical problems, in light of h[is] past medical history, are causally related to the subject accident" (*Style v Joseph*, 32 AD3d 212, 214 [2006]). Indeed, plaintiffs' neurologist did not discuss the degenerative conditions at all (*see Valentin*, 59 AD3d at 184; *Becerril*, 50 AD3d at 261-262; *Brewster*, 44 AD3d at 352; *Shinn*, 1 AD3d at 198; *see also Charley v Goss*, 54 AD3d 569, 571-572 [1st Dept 2008], *affd* 12 NY3d 750 [2009] [plaintiff's expert's "report addresses plaintiff's subjective complaints of recurring discomfort, tenderness and pain, but fails to list any objective orthopedic tests performed, and neglects to adequately, or in some cases, even peripherally explain plaintiff's cessation of treatment, or the preexisting degenerative changes to plaintiff's cervical and lumbar spine and right shoulder delineated in (defendant's expert's report)"]).

According to the majority, plaintiffs raised a triable issue of fact with respect to causation even though they did not present expert evidence specifically addressing defendants' evidence that John Linton had preexisting degenerative conditions in both his spine and knee. As the majority sees it, plaintiffs' expert's conclusory opinion that John Linton's injuries were caused by the accident is sufficient to withstand summary judgment despite the expert's failure to address the evidence of preexisting degenerative conditions. As is evident from the above-quoted language from *Valentin, Becerril, Brewster* and *Shinn*, the majority's conclusion is inconsistent with those decisions. In an effort to avoid that consistent case law, the majority attempts to distinguish *Valentin, Becerril, Brewster* and *Shinn*. Those attempts are not successful.

With respect to *Valentin*, the majority writes that the "Court held that the plaintiff failed to raise an issue of fact because the chiropractor's opinion was not based on an examination of the plaintiff made contemporaneously with the accident, but rather on an examination which occurred two months thereafter, when the link between the trauma and the reported symptoms would not have been as readily discernable. Here, of course, [plaintiff's expert] examined plaintiff within eight days of the accident, when the trauma was still fresh. Accordingly, his ability to link plaintiff's symptoms to the accident was far superior to the ability of the doctor in *Valentin*."

As is clear from the above-quoted portion of our decision in *Valentin*, the majority's discussion of that case is incomplete and misleading. As noted, in *Valentin*, we determined that: "Defendants established prima facie that plaintiff did not sustain a serious injury within the meaning of Insurance Law

§ 5102 (d) by submitting a radiologist's affirmed report that plaintiff's MRI films revealed evidence of degenerative disc disease predating the accident and no evidence of post-traumatic injury to the disc structures. In opposition, plaintiff failed to raise an inference that his injury was caused by the accident *by not refuting defendants' evidence of a preexisting degenerative condition of the spine*. Missing from all of plaintiff's submissions is any mention of the congenital defect at the S1 vertebral level and degenerative condition of plaintiff's lumbar spine reported by Dr. Eisenstadt or the preexisting degenerative changes in his right knee and degenerative meniscal tears in both posterior horns of both menisci reported by plaintiff's own experts, Drs. Lubin and Rose, in their initial evaluation of plaintiff's right knee shortly after the accident" (*id.* at 184-185 [citations omitted and emphasis added]).

With respect to the opinion of the plaintiff's chiropractor, we rejected the chiropractor's opinion that the plaintiff sustained a serious injury as a result of the subject accident for a number of reasons. One of the reasons we rejected it was because the plaintiff failed to establish that the chiropractor's findings were made contemporaneously with the accident (*id.* at 185)—the reason noted by the majority. Another reason we rejected it, indeed, the principal reason,[1] was that "not only did plaintiff's experts fail to refute defendants' evidence of a preexisting congenital and degenerative condition of the spine, his own doctors reported a degenerative condition of the right knee. [Plaintiff's doctor's] failure even to mention, let alone explain, why he ruled out degenerative changes as the cause of plaintiff's knee and spinal injuries rendered his opinion that they were caused by the accident speculative" (*id.* at 186). What was true in *Valentin*—that the defendants submitted the report of a radiologist who averred that the plaintiff's MRI films revealed evidence of a preexisting degenerative condition and that the plaintiff failed to refute that evidence—is true here. Nevertheless, the majority does not mention this portion of our holding.

The majority dismisses both *Becerril* and *Brewster* on the ground that those cases "involved plaintiffs who were undisputably involved in . . . prior accident[s] in which the same body parts were injured but failed to address why the prior accidents were not a possible cause of their current symptoms." That the plaintiffs in *Becerril* and *Brewster* suffered preexisting conditions as a result of other accidents and John Linton suffered preexisting degenerative conditions is a distinction without a

---

1. "The most significant flaw in plaintiff's arguments is his failure to address causation" (*id.* at 186).

difference. Regardless of the *cause* of the preexisting condition, the legal principle remains the same: once a defendant has presented evidence of a preexisting condition the plaintiff must present evidence specifically addressing that condition (*e.g.* *Becerril*, 50 AD3d at 261-262).

Like its discussion of *Valentin*, the majority's discussion of *Shinn* is both incomplete and misleading. The majority writes that the complaint in *Shinn* was "dismissed because the plaintiff's expert's opinion that a motor vehicle accident caused his herniated discs was based on an examination performed 4½ years after the accident occurred." One of the grounds on which we rejected the plaintiff's expert's opinion in that case was that the expert did not examine the plaintiff until 4½ years after the accident. But the majority ignores everything in our decision in *Shinn* that precedes the discussion regarding the issue of gap in treatment. Thus, the majority fails to mention the relevant portions of that decision as it relates to this appeal, namely, that the radiologist's "report reveal[ed] that [the plaintiff's] disc abnormalities were the result of preexisting degenerative conditions, and thus not causally related to the February 1997 accident. This evidence, submitted in proper form, was sufficient to establish prima facie entitlement to dismissal for failure to meet the serious injury threshold" (1 AD3d at 197). The majority also fails to mention that, while the plaintiff's expert's affirmation demonstrated that he suffered from disc herniations in his cervical spine and had a 40% restriction of range of motion of the cervical spine, we concluded that: "[w]hat plaintiffs' submissions fail to do . . . is demonstrate that the cervical disc herniations or any other serious injury suffered by [James Shinn] are causally related to the . . . accident. The record shows that after the accident, [James Shinn] did not miss any work except a few hours for medical appointments. [He] received chiropractic treatment for approximately nine months after the accident, and, according to the unsworn chiropractor's reports from 1997, [he] had some limitations of range of motion in the cervical and lumbar spine. However, [James Shinn] was [not] diagnosed with cervical disc herniations [at that time]. Moreover, despite [the] 1997 MRI showing James Shinn as having herniated and bulging discs in his lumbar spine, plaintiffs failed to address defendant's medical evidence attributing those injuries to preexisting degenerative conditions" (*id.* at 198).

In short, the majority's claim that *Valentin*, *Becerril*, *Brewster* and *Shinn* "are on their face inapposite and are all readily distinguishable," cannot withstand scrutiny.

The majority also writes that "[t]he trilogy of cases decided in

*Pommells v Perez* (4 NY3d 566 [2005]) governs this area of the law." This statement is only partially correct. *Pommells,* along with the case law of this Court, e.g., *Valentin, Becerril, Brewster* and *Shinn,* "governs this area of the law." In any event, both *Pommells* and our case law dictate that John Linton's claims regarding injuries to his left knee and spine must be dismissed.

In *Pommells,* the Court of Appeals addressed three cases in which the plaintiffs claimed to have suffered soft-tissue injuries caused by car accidents. Noting the objectives of the No-Fault Law—to promote prompt resolution of injury claims, limit costs to consumers and alleviate unnecessary burdens on the courts—the Court concluded "that, even where there is objective medical proof [of a serious injury], when additional contributory factors interrupt the chain of causation between the accident and claimed injury—such as a gap in treatment, an intervening medical problem or a preexisting condition—summary dismissal of the complaint may be appropriate" (*id.* at 572). The Court then applied this principle to each of the three cases before it.

In the first case, *Pommells v Perez,* the Court determined that the defendants' motion for summary judgment dismissing the complaint was properly granted because (1) the plaintiff failed to offer an explanation for ceasing treatment shortly after the accident and (2) the "plaintiff failed to address the effect of [a] kidney disorder [he suffered after the accident] on his claimed accident injuries" (*id.* at 574). With respect to the second point, the Court held that because "[p]laintiff's submission left wholly unanswered the question whether the claimed symptoms diagnosed by [plaintiff's physician] were caused by the accident" (*id.* at 575, citing, among other cases, *Shinn*), the plaintiff failed to raise a triable issue of fact regarding whether his injuries were proximately caused by the accident.

The majority concludes that *Pommells* is distinguishable from the case before us because in *Pommells* the plaintiff's physician acknowledged that his kidney ailment was a potential cause of his injuries, and here John Linton's physician did not acknowledge that he suffered from preexisting degenerative conditions. This "distinction" is unpersuasive. By the majority's reasoning, no defendant in an action such as this one can obtain summary judgment on the ground that a plaintiff had a preexisting condition unless the plaintiff (or his or her physician) concedes that the plaintiff has a preexisting condition. Nothing in the Court's decision in *Pommells* supports that notion. Rather, the Court stated that Pommells' opposition to the motion was insufficient because he "failed to address the effect of [a] kidney disorder [he suffered after the accident] on his claimed accident injuries"

(*id.* at 574). Moreover, our case law both prior to and following *Pommells* has made plain that a defendant satisfies its initial burden on a motion for summary judgment dismissing a complaint in a serious injury case where the defendant submits evidence in admissible form that the plaintiff suffered from a preexisting condition, and, if that showing has been made, the burden shifts to the plaintiff to submit evidence specifically addressing the evidence of a preexisting condition (*see Valentin*, 59 AD3d at 184; *Becerril*, 50 AD3d at 261-262; *Brewster*, 44 AD3d at 352; *Shinn*, 1 AD3d at 197).

In the second case decided by the Court in *Pommells*, *Brown v Dunlap*, the Court reversed an order of the Appellate Division affirming an order of Supreme Court granting the defendants' motion for summary judgment dismissing the complaint. The Court of Appeals rejected the contentions that the plaintiff failed to provide an adequate explanation for a gap in treatment and that plaintiff failed to address evidence that he suffered from a chronic disc condition. Concerning the second point, the Court essentially found that the defendants failed to make a prima facie showing of entitlement to summary judgment on the ground that the plaintiff's injuries were caused by a preexisting degenerative condition, and, therefore, the burden never shifted to the plaintiff to submit evidence specifically addressing that condition. Thus, the Court wrote: "as to an alleged preexisting condition, there is only [the defendant's examining physician's] conclusory notation, itself insufficient to establish that plaintiff's pain might be chronic and unrelated to the accident. As opposed to the undisputed proof of plaintiff's contemporaneous, causally relevant kidney condition in *Pommells*, here even two of defendants' other doctors acknowledged that plaintiff's (relatively minor) injuries were caused by the car accident. On this record, plaintiff was not obliged to do more to overcome defendants' summary judgment motions" (4 NY3d at 577-578).

The majority asserts that defendants' radiologist's "opinion[s] that plaintiff's knee and spinal injuries were degenerative in nature [are] no less 'conclusory' than the *Brown* radiologist's statement that the spinal abnormalities in that case were 'chronic and degenerative in origin.' " Once again, the majority is wrong.

In *Brown*, the defendants' radiological expert reviewed MRI films of the plaintiff's spine and "noted—without more—that the 'disc desiccation and minimal diffuse disc bulge' were 'chronic and degenerative in origin' " (*id.* at 576 [internal brackets omitted]). Here, however, defendants' radiologist provided a far more detailed opinion regarding the preexisting

degenerative conditions in John Linton's left knee and spine, demonstrating that he, like the plaintiff in *Pommells*, had a "contemporaneous, causally relevant" condition (*id.* at 578). Thus, the radiologist affirmed with respect to the left knee that "[t]here is a grade II degenerative signal change seen in the posterior horn of the medial meniscus," and she concluded "[t]he grade II mucoid degenerative signal change is as the name implies, an intrasubstance, degenerative process without traumatic basis or causal relationship to the accident." With respect to the spine, the radiologist affirmed that "[d]egeneration of all the cervical intervertebral discs is noted." She found that the films: "reveal[ ] evidence of longstanding, pre-existing, degenerative disc disease. There is osteophyte formation, discogenic ridging, endplate signal change and uncinate joint hypertrophy seen. These bony changes are greater than six months in development and due to [the] extent are more likely years in origin. These changes could not have occurred in the time interval between examination and injury and clearly predate the accident. There is disc degeneration throughout the cervical spine. This drying out and loss of disc substance is also longstanding, chronic, and pre-existing. Disc bulging is seen. Bulging is not traumatic but degeneratively induced, related to ligamentous laxity. No ossesous, ligamentous, or intervertebral disc abnormalities are seen attributable to the . . . accident." Thus, *Brown* is plainly distinguishable.

The third and final case addressed by the Court in *Pommells* was *Carrasco v Mendez*. In *Carrasco*, the Court affirmed an order of the Appellate Division affirming an order of Supreme Court granting the defendant's motion for summary judgment dismissing the complaint. The Court determined that the defendant's evidence was sufficient to sustain his initial burden on the motion and shift the burden to the plaintiff to raise a triable issue of fact with respect to causation. The defendant's evidence included a report of a physician who treated the plaintiff that indicated that the plaintiff suffered from a preexisting degenerative condition in his spine (which he claimed was injured as a result of the motor vehicle accident giving rise to the action), and a report by an orthopedic surgeon who reviewed MRI films taken of the plaintiff's spine and opined that the films demonstrated that the plaintiff suffered from a preexisting degenerative condition in his spine (*id.* at 578). The Court also determined that the plaintiff's evidence, which included the affidavit of a physician who treated the plaintiff for the injuries he allegedly sustained in the accident, was insufficient to raise a triable issue of fact. Although the plaintiff's physician opined that the plaintiff's spinal injuries were caused by the motor ve-

hicle accident, the physician failed to "refute defendant's evidence of a preexisting degenerative condition" (*id.* at 580).

The majority asserts that *Carrasco* is distinguishable from the case before us because the defendant in *Carrasco* submitted " '*persuasive* evidence that plaintiff's alleged pain and injuries were related to a preexisting condition' " (quoting *Pommells* at 580), and defendants' evidence—the report of the radiologist—is "not 'persuasive.' " What the majority fails to acknowledge is that the evidence on which defendants rely to establish that John Linton suffered from preexisting degenerative conditions in his left knee and spine is the same evidence this Court has found "persuasive" in several other cases, to wit, the affirmed report of a radiologist opining that the plaintiff's MRI films revealed degenerative conditions (*see e.g. Valentin*, 59 AD3d at 184; *Becerril*, 50 AD3d at 261-262; *Shinn*, 1 AD3d at 197; *see also Brewster*, 44 AD3d at 352). Thus, *Carrasco* supports defendants' claim that they are entitled to partial summary judgment.

In sum, where the defendant submits evidence in admissible form indicating that the plaintiff suffered from a preexisting degenerative condition in the area of the body that the plaintiff claims was injured as a result of the motor vehicle accident, the defendant has made a prima facie showing of entitlement to judgment as a matter of law dismissing the complaint on the ground that the accident was not a proximate cause of the plaintiff's injuries. In opposition to such a showing, the plaintiff must submit evidence specifically addressing the defendant's evidence that the plaintiff suffered from a preexisting degenerative condition. Because defendants met their initial burden and plaintiffs failed to address defendants' evidence that John Linton suffered from preexisting degenerative conditions, I would grant those portions of defendants' motion seeking summary judgment dismissing plaintiffs' claims premised on injuries to John Linton's spine and left knee (as well as plaintiffs' claim under the 90/180-day provision of Insurance Law § 5102 [d], which the majority dismisses), and otherwise affirm.[2]

---

2. Defendants failed to make a prima facie showing of entitlement to judgment as a matter of law dismissing the claims premised on injuries to John Linton's right shoulder.