Order, Supreme Court, Bronx County (Geoffrey D. Wright, J.), entered on or about September 16, 2009, which denied defendant Chavez’s motion for summary judgment dismissing the complaint, reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment dismissing the complaint as against that defendant.
The court properly concluded that defendant, through his medical experts, made a prima facie showing that plaintiff did not suffer a serious injury within the meaning of Insurance Law § 5102 (d) in her accident on January 13, 2008. Indeed, even where there is objective medical proof of an injury, summary dismissal of a serious injury claim may be appropriate when additional contributory factors, such as preexisting conditions, interrupt the chain of causation between the accident and the claimed injuiy (see Pommells v Perez, 4 NY3d 566, 572 [2005]). Here, plaintiff claims she suffered degenerative disc herniations and disc bulges in her lower back as a result of the accident, as well as injuries to her head, neck, shoulder and left knee. Chavez supported his motion with the reports of three physicians. Neurologist Michael J. Cárdente, who examined plaintiff on March 18, 2009, opined that there were no objective findings such as myotomal weakness, dermatomal sensory deficits, asymmetric reflexes or atrophy supporting the presence of a cervical or lumbosacral radiculopathy. Dr. Cárdente concluded that there was no evidence of a causally related neurological injury or disability, or the need for any specific neurological treatment in reference to the accident. Orthopedic surgeon John H. Buckner, who also examined plaintiff 14 months after the accident, concluded that her spinal examination was normal except for degenerative changes common for a person of her age, physique and preexisting scoliosis. In particular, Dr. Buckner noted that the ranges of motion of plaintiffs cervical spine were greater than most standard tables, while those of her thoracic and lumbar spine were lower. He attributed the difference to preexisting idiopathic scoliosis unrelated to any injury. Dr. *819 Buckner also opined that MRI findings with respect to plaintiffs left knee were indicative of a preexisting condition. In this respect, he also noted that the first medical report submitted for his review, which is dated a month after the accident, does not mention complaints of left knee pain or injury. David A. Fisher, a radiologist, reviewed MRIs of plaintiffs cervical and lumbar spine and left knee which were taken two months after the accident. As to the spinal MRIs, Dr. Fisher found degenerative changes consistent with a preexisting condition. He further opined that there was no radiographic evidence of recent traumatic or causally related injury to plaintiffs cervical or lumbar spine, or to the left knee. Hardly conclusory, the reports of all of defendants’ examining physicians cite cervical, lumbar and left knee MRIs taken two months after the accident. In addition, the reports of Drs. Cárdente and Buckner recite a review of reports prepared by plaintiffs treating physicians.
Notwithstanding Chavez’s prima facie showing that plaintiff did not suffer a serious injury, the court denied his motion, finding the reports of plaintiffs physicians sufficient to enable her to survive the motion for summary judgment. This was error because plaintiffs physicians did not address the medical findings of preexisting degenerative conditions (see e.g. Depena v Sylla, 63 AD3d 504, 505 [2009], lv denied 13 NY3d 706 [2009]; Valentin v Pomilla, 59 AD3d 184 [2009]; cf. Linton v Nawaz, 62 AD3d 434 [2009], affd 14 NY3d 821 [2010]). In addition, plaintiffs deposition testimony that she stayed home for a few days after the accident and lost no time from work demonstrates prima facie that she did not sustain a 90/180-day injury (see Cruz v Aponte, 60 AD3d 431, 432 [2009]), and the medical evidence she submitted in opposition to defendant’s motion fails to substantiate any qualifying injury or impairment (Nelson v Distant, 308 AD2d 338, 339-340 [2003]). Concur—Tom, J.P., Renwick and DeGrasse, JJ.
Moskowitz and Manzanet-Daniels, JJ., dissent in part in a memorandum by Manzanet-Daniels, J., as follows: I take issue with the majority’s conclusion that plaintiffs medical evidence failed to address defendant’s alleged expert opinions that her claimed limitations are the result of preexisting conditions and not attributable to the January 13, 2008 accident.
Defendant’s experts merely alleged, in entirely conclusory terms, that plaintiffs injuries were attributable to a “preexisting condition.” In this case there is no “persuasive” evidence of a preexisting injury of the type described in Pommells v Perez (4 NY3d 566 [2005]). Because I believe these conclusory assertions do not satisfy defendant Chavez’s burden on a mo *820 tion to dismiss for lack of serious physical injury, the burden never shifted to plaintiff. Even assuming the burden had shifted to plaintiff, the affirmations of plaintiffs treating physicians and experts more than sufficed to raise a triable issue of fact. Plaintiffs treating physicians and experts, upon examination and after considering all of the medical records, unequivocally opined that her injuries were caused by the January 13, 2008 accident. Therefore, I respectfully dissent.
The record evidence herein shows that plaintiff, 49 years old, had never suffered prior injuries to her neck, back or left knee. Prior to the accident, she was asymptomatic. Only after the accident did she complain of neck, back and knee pain. She was found, upon examination, to have range-of-motion limitations in the left knee and in the cervical and lumbar spine. A cervical EMG showed the existence of left-sided C-7 radiculopathy and bilateral median sensory entrapment neuropathies at the wrists. MRI studies on March 29, 2008 showed bulging and herniated discs at multiple levels in the cervical (C2-3, C3-4, C4-5, C5-6, C6-7, C-7-T1) and lumbar (L2-3, L3-4, L4-5, L5-S1) spine, with thecal sac and nerve root impingement. The reports noted disc dessication and degenerative endplate changes at L5-S1, but did not describe the numerous other positive findings as degenerative' in nature. The radiological reports noted, in passing, that axial images demonstrated counterclockwise rotary scoliosis. An MRI study of the left knee revealed a lateral shift of the patella, with mild arthrosis, a tear of the posterior horn of the medial meniscus, degenerative thinning of the anterior cruciate ligament, and scarring of the medial collateral ligament.
Plaintiff commenced physical therapy immediately after the accident, which she continued until it was determined, in December 2008, that she had reached the maximum medical improvement from conservative management. Approximately six months after the accident, she underwent arthroscopic knee surgery for chondral erosion of the patella femoral joint and a partial thickness tearing of the posterior horn of the lateral meniscus.
Chavez moved for summary judgment, relying, inter alia, on the affirmed medical reports of Dr. Cárdente, a neurologist, Dr. Buckner, an orthopedist, and Dr. Fisher, a radiologist. Both Dr. Cárdente and Dr. Buckner, in rendering their opinions, reviewed plaintiffs medical records, including the MRI reports, but did not review the MRI films. Dr. Cárdente found “no correlation between the findings allegedly found in the spine MRI reports” and plaintiff’s examination, which he described as normal, observing that as “is well known, bulges and herniations may *821 also be seen in completely asymptomatic and atraumatic individuals.”
Dr. Buckner concluded that plaintiffs spinal examination was normal except for degenerative changes common to a person of her age, physique and preexisting scoliosis. He opined there were “no reported findings” on the MRI “to suggest recent onset of any of the putative abnormalities,” that in fact the “ ‘findings’ [we]re more consistent with normal findings for a person of her age, habitus and pre-existing scoliosis than with any trauma or injury.” With regard to the positive findings on the MRI study of plaintiffs left knee, Dr. Buckner opined that they were “clearly pre-existing.” If a knee injury had been related to the accident, plaintiff would have been fitted with an immobolizer and crutches in the emergency room.
Chavez also relied on the report of Dr. Fisher, who reviewed the MRI studies of plaintiffs left knee and cervical and lumbar spine. With respect to the cervical spine, Dr. Fisher opined that the study demonstrated “mild diffuse degenerative changes” consistent with a preexisting condition, with no evidence of herniations or bulges, and no evidence of recent trauma. With respect to the lumbar spine, Dr. Fisher opined that the study demonstrated degenerative changes at the level of L5-S1 consistent with a preexisting condition, with no herniations and only a “mild” disc bulge at L5-S1 that was compatible with the amount of degenerative change present. He opined that there was no evidence of recent trauma. As to the left knee, Dr. Fisher opined that it showed “[g]rade II signal within the posterior horn of the medial meniscus,” and “[m]ild diffuse articular cartilage loss,” consistent with a preexisting condition. Dr. Fisher found no discrete meniscal or ligament tear, nor evidence of recent trauma.
In my opinion, defendant’s expert affirmations failed to meet defendant’s prima facie burden of showing lack of “serious injury” within the meaning of the Insurance Law. The affirmations of defendants’ neurologist and orthopedist were entirely conclusory and insufficient to satisfy their burden. Dr. Cárdente merely opined, in entirely conclusory terms, that there was “no correlation” between the positive findings in plaintiff’s MRI reports and plaintiff’s examination, which he described as normal. Dr. Buckner similarly opined, in conclusory fashion, that there were no reported findings in the MRI studies to suggest recent onset of any of the putative abnormalities and that the findings were “more consistent” with normal findings for a person of her age, habitus and preexisting scoliosis.
Defendants’ expert radiologist, Dr. Fisher, opined that the *822 MRI of the cervical spine demonstrated “mild diffuse changes,” most pronounced at C5-6 and C6-7, which he does not describe, and which he similarly attributed, in conclusory fashion, to “a preexisting condition.” Dr. Fisher opined that the “degenerative changes” at the L5-S1 level shown in the MRI of plaintiff’s lumbar spine were “consistent” with a preexisting condition, but did not address the other positive findings in the lumbar spine. Dr. Fisher opined that plaintiff suffered degenerative changes of the knee, but failed to address the positive findings in the March 2008 report, namely, that in addition to a degenerative thinning of the anterior cruciate ligament, plaintiff had also suffered a “lateral shift of the patella,” and a tear of the posterior horn of the medial meniscus. The radiologist further failed to address the various disc herniations and bulges, at multiple levels, clearly identified in the contemporaneous MRI studies of the cervical and lumbar spine, and failed to address the evidence of patella shift and meniscal tear shown in the contemporaneous MRI study of the left knee.
The conclusory assertions of defendants’ experts—which, I note, are couched in conditional terms such as “more consistent with”—were insufficient to meet Chavez’s prima facie burden. Nowhere do these experts explain how the injuries suffered by plaintiff—who, it is undisputed, was previously asymptomatic and had never been in an accident—were attributable to a “degenerative” condition rather than to the January 13, 2008 accident. Defendant cannot shift the burden of proof merely by submitting expert affidavits that aver, in conclusory terms, that a previously asymptomatic plaintiff, with no history of prior (or subsequent) accidents, suffers from degenerative changes that are the cause of her current complaints.
Even assuming—which I do not concede—that Chavez satisfied his initial burden, plaintiffs submissions raise a triable issue of fact. Plaintiffs treating physicians and experts reviewed the relevant MRI reports, discussing at length the positive findings of the respective MRIs (including, for example, degenerative thinning of the anterior cruciate ligament), yet nonetheless opined that her injuries were attributable to the January 13, 2008 accident, thus refuting the defense experts’ contention that the evidence was consistent with preexisting degenerative changes (see Norfleet v Deme Enter., Inc., 58 AD3d 499 [2009]).
Dr. Alexander Visco, plaintiffs treating physiatrist, examined plaintiff shortly after the accident and noted range-of-motion restrictions in the cervical and lumbar spine, as well as the left knee. Visco opined that plaintiff had suffered these injuries as a result of the January 13, 2008 accident. MRIs taken two months *823 after the accident showed disc bulges and herniations at multiple levels of the cervical and lumbar spine. An MRI of the left knee disclosed a tear of the medial meniscus and a lateral shift of the patella. An April 2, 2008 EMG showed left-sided C7 radiculopathy.
On July 18, 2008, Dr. Dov Berkowitz performed arthroscopic surgery on plaintiffs knee. Dr. Berkowitz found plaintiff, on examination, to have limited range of motion in the knee and attributed her knee injuries to the accident. Dr. Visco’s follow-up reports, dated April 1, May 20, July 8, September 16, and December 17, 2008, discussed the positive findings detailed in the respective MRIs of plaintiffs cervical and lumbar spine and left knee, as well as the EMG, noted range-of-motion restrictions, and continued to describe plaintiff as a patient “status post motor vehicle accident on January 13, 2008 with cervical disc herniations and disc bulges, left C7 cervical radiculopathy, lumbar disc herniations and bulges and left knee sprain and internal derangement.” In June 2009, plaintiff’s expert physiatrist, Dr. Gautam Khakhar, examined plaintiff and noted her still to have significant range-of-motion restrictions. Dr. Khakhar noted that plaintiff suffered from disc herniations and bulges at multiple levels of the cervical and lumbar spine, left-sided C7 radiculopathy, and left knee internal derangement, status postarthroscopic procedure, and opined that her injuries were attributable to the January 13, 2008 accident. Dr. Khakhar, like Dr. Visco, reviewed the relevant MRIs and electrodiagnostic studies.
Their conclusions that plaintiffs symptoms were related to the accident were not speculative or conclusory, but rather, based on physical examinations of the patient made shortly after the onset of her complaints of pain and other symptoms, which she claimed arose after the January 13, 2008 accident. The affirmations of plaintiffs experts raised an issue of triable fact, and a jury was entitled to determine which medical opinion deserved greater weight (see Linton v Nawaz, 62 AD3d 434 [2009], affd 14 NY3d 821 [2010]). As we stated in Linton (at 443) there is “no basis on this record to afford more weight to defendants’ expert’s opinion and there are no ‘magic words’ which plaintiffs expert was required to utter to create an issue of fact” concerning whether the injuries alleged were degenerative in nature. “If anything, plaintiff’s expert’s opinion is entitled to more weight [and] that opinion constituted an unmistakable rejection of defendants’ expert’s theory.” (Id.)
Plaintiffs experts were clearly aware of the relevant MRI findings, yet ascribed her injuries to the accident. For example, *824 in his July 2009 report, Dr. Khakhar discussed at length the abnormal findings as noted in the relevant studies, attributing these findings to the accident:
“As a result of the accident of January 13, 2008, [plaintiff] has sustained significant injuries to her left knee and cervical and lumbar spine.
“The impact caused by the accident exerted pressure to the structural integrity of the patient’s left knee resulting in a meniscal tear causing the patient significant pain and difficulty with the left knee . . .
“Furthermore, the impact caused by the accident exerted tremendous pressure to the structural integrity of the nucleus pulposus, annulus fibrosis and facet joints of the cervical and lumbar spine resulting in multiple cervical (C2-3, C6-7 and C7Tl) and lumbar (L4-5 and L5-S1) disc herniations, in addition to, cervical (C3-4, C4-5 and C5-6) and lumbar (L2-3, L3-4) disc bulges ... In addition, range of motion testing revealed consistent and significant limitations in cervical and lumbar range of motion. Cervical R.O.M. was restricted up to 25%, and lumbar R.O.M. was limited up to 33% ...
“These pathologies are clinically correlated with the patient’s symptomatology, exam findings and physical limitations. The above objective findings help to explain the ongoing pain and impairments of the patient’s cervical and lumbar spine, as well as her left knee. Also, the absence of prior trauma at these levels suggests that the left knee tear, disc pathologies and nerve injuries did not pre-exist the above noted accident.”
I would affirm the order of the lower court insofar as it denied Chavez’s motion to dismiss plaintiffs claims alleging “serious injury” based on significant limitation of use or permanent consequential limitation of use of a body function or system.