■ DENA S. GLYNN et al., Appellants, v GEORGE HOPKINS, Respondent. [867 NYS2d 391]—

Order, Supreme Court, Bronx County (Mary Ann Brigantti-Hughes, J.), entered November 24, 2006, which granted defendant's motion for summary judgment dismissing the complaint, reversed, on the law, without costs, the motion denied and the complaint reinstated.

Defendant failed to make a prima facie showing that plaintiff Dena S. Glynn did not sustain a serious injury within the meaning of Insurance Law § 5102 (d). Defendant's own examining neurologist reported finding limitations in plaintiff's ability to use the cervical area of her spine, which he quantified and causally related to the accident (*see generally Toure v Avis Rent A Car Sys.*, 98 NY2d 345, 350 [2002]; *see Korpalski v Lau*, 17 AD3d 536, 537 [2005]). In addition, defendant's examining neurologist failed to set forth the objective tests performed supporting his claims that there was no limitation of range of motion of the lumbar spine (*see* 98 NY2d at 351; *Lamb v Rajinder*, 51 AD3d 430 [2008]). Also, defendant's radiologist's statement that "there are underlying degenerative changes suggesting that [a small central disk herniation at C4-C5] may be chronic in nature" is too equivocal to satisfy defendant's prima facie burden to show that such herniation was not caused by a traumatic event. In view of the foregoing, we need not consider plaintiff's opposition to the motion (*see Caballero v Fev Taxi Corp.*, 49 AD3d 387 [2008]). Concur—Mazzarelli, J.P., Acosta and Renwick, JJ.

Catterson and McGuire, JJ., dissent in a memorandum by

McGuire, J., as follows: Plaintiff Dena Glynn sustained personal injuries when the motor vehicle she was driving was struck by a vehicle driven by defendant. Plaintiff commenced this negligence action, predicated on multiple serious injury categories (Insurance Law § 5102 [d]), against defendant to recover damages for disc injuries she allegedly sustained as a result of that accident.

Defendant moved for summary judgment dismissing the complaint, arguing, among other things, that plaintiff's injuries were not caused by the car accident. In support of his motion, defendant submitted plaintiff's deposition testimony in which she stated that she had sustained neck injuries in a 1993 car accident. Notably, plaintiff testified that she sustained a herniated disk at C5-C6 as a result of that prior accident. Plaintiff also injured her left knee in a 2001 slip and fall incident. Additionally, defendant also submitted the affirmation of a neurologist who noted both of the prior accidents, and a radiologist who reviewed MRI films taken of plaintiff's spine approximately four months after the accident involving defendant's vehicle. The radiologist noted that plaintiff had a herniated disk at C4-C5 and a bulging disk at C5-C6, and opined that:

"There is evidence of disc desiccation at both the C4-C5 and C5-C6 levels. Disc desiccation indicates that the disc has dried out and lost its normal water content. A very small disc herniation is present at the C4-C5 level. The association of this disc herniation with underlying disc desiccation suggests that it is probably chronic in nature. Acute disc herniations usually occur in well-hydrated discs. It is the central, gelatinous portion of the disc which insinuates itself through the outer fibers of the disc to result in an acute disc herniation. Once this central, gelatinous portion dries up, the incidence of acute disc herniation rapidly diminishes.

"There are classic degenerative changes present at the C5-C6 level. There is disc space narrowing and disc bulging. Disc bulging is unrelated to trauma. Disc bulging occurs as the outer fibers of the disc . . . lose their normal elasticity. This allows the central, more gelatinous portion of the disc to bulge circumferentially. This is the commencement of degenerative disc disease. Disc space narrowing occurs when there is loss of the internal architecture of the disc allowing it to collapse upon itself. There are anterior and posterior osteophytes. Osteophytes represent bony spurs which form off of the vertebral bodies. This represents actual bone formation and is chronic in nature. This is an attempt by the spine to stabilize itself in the setting of the degenerative process.

"In my opinion, [plaintiff] does have a small central disc

herniation at the C4-C5 level. There are underlying degenerative changes suggesting that this may be chronic in nature. Classic degenerative changes unrelated to trauma are present at the C5-C6 level."

In opposition, plaintiff submitted the affirmation of her treating neurosurgeon. This physician noted that plaintiff "advised me that she had a history of some occasional neck pain and approximately 10 years ago was diagnosed with a herniated disc at C5-C6." The physician found that plaintiff had several bulging discs and opined that her spinal injuries were "substantially caused" by the motor vehicle accident involving defendant.

Supreme Court granted defendant's motion and dismissed the complaint. The majority reverses and reinstates the complaint, finding that defendant did not meet his initial burden on his motion. Since I disagree with that conclusion and believe that Supreme Court correctly granted the motion, I respectfully dissent.

Defendant submitted evidence, including plaintiff's own deposition testimony, that she had sustained a neck injury to her C5-C6 disc several years before the accident giving rise to this action, and plaintiff now seeks to recover damages for disc injuries. Evidence of plaintiff's prior cervical spine injury coupled with the affirmation of defendant's radiologist, who opined that plaintiff's cervical spine injuries are degenerative, was sufficient to establish defendant's prima facie showing of entitlement to judgment as a matter of law (*see Becerril v Sol Cab Corp.*, 50 AD3d 261, 261 [2008] ["Defendants established a prima facie entitlement to summary judgment by submitting, inter alia, the affirmed report of a radiologist who opined that plaintiff's MRI films revealed degenerative disc disease, and no evidence of post-traumatic injury to the disc structures"]; *see also Ronda v Friendly Baptist Church*, 52 AD3d 440, 441 [2008] ["Defendants carried their initial burden of showing that plaintiff's shoulder tendon tear and other injuries were not proximately caused by the subject accident, by submitting reports of plaintiff's previous line-of-duty injuries and the opinion of their examining orthopedist, based in part on the MRI report describing arthritic changes in the shoulder joint as degenerative, that the shoulder injury was among plaintiff's preexisting conditions" (citation omitted)]; *Figueroa v Castillo*, 34 AD3d 353, 353-354 [2006] ["Defendants' submissions included excerpts from plaintiff's deposition, as well as medical reports by plaintiff's doctors, and described another automobile accident one month before the subject accident, wherein she sustained similar knee and back injuries, and a fall on the same

knee subsequent to the latest accident. These established additional contributing factors, interrupting the chain of causation between the subject accident and claimed injury, thereby shifting the burden of proof to plaintiff"]).

I disagree with the majority's conclusion that defendant's radiologist's opinions were equivocal. With respect to the C5-C6 disc, the expert clearly and unequivocally stated that "[c]lassic degenerative changes unrelated to trauma are present at the C5-C6 level." With respect to the C4-C5 disc, the radiologist asserted that "[t]he association of th[e] [C4-C5] disc herniation with underlying disc desiccation suggests that it is probably chronic in nature," and that "[t]here are underlying degenerative changes [to that disc] suggesting that th[e] [injury] may be chronic in nature." While the radiologist did not state that her opinion in this regard was to a reasonable degree of medical certainty, her opinion has probative value nonetheless. The key inquiry in gauging whether an expert has expressed sufficient certainty in her opinion for it to have probative value is "whether it is 'reasonably apparent' that 'the doctor intends to signify a probability supported by some rational basis' " (*Matott v Ward*, 48 NY2d 455, 461 [1979], quoting *Matter of Miller v National Cabinet Co.*, 8 NY2d 277, 282 [1960]). Based on the quoted language above from the radiologist's affirmation, it is reasonably apparent that she intended to signify that it was more likely than not that the C4-C5 disc injury was a degenerative condition. Unquestionably, moreover, she outlined her reasons for that conclusion, thereby providing a rational basis for it (*see McGrath v Irving*, 24 AD2d 236, 238 [1965], *lv denied* 17 NY2d 419 [1966] ["courts have come to permit . . . words such as 'possible' and 'probable' by the medical profession in expressing an opinion, providing, of course, there is a reasonable basis" for the opinion]).

In opposition, plaintiff failed to raise a triable issue of fact since her expert failed to address how her "current medical problems, in light of her past medical history, are causally related to the subject accident" (*Style v Joseph*, 32 AD3d 212, 214 [2006]). The most glaring deficiency in plaintiff's opposition is that her expert did not discuss the prior cervical spine injury at all except to note that she had sustained it (*see Becerril*, 50 AD3d at 261-262 ["plaintiff conceded at his deposition that he sustained injuries to his neck and back in a prior accident, and an MRI conducted shortly after the subject accident showed degenerative disc disease. In these circumstances, it was incumbent upon plaintiff to present proof addressing the asserted lack of causation"]; *Brewster v FTM Servo, Corp.*, 44

AD3d 351, 352 [2007] ["Once a defendant has presented evidence of a preexisting injury, even in the form of an admission made at a deposition, it is incumbent upon the plaintiff to present proof to meet the defendant's asserted lack of causation" (citation omitted)]).

Accordingly, I would affirm the order.