(May 7, 2009)

■ William June et al., Respondents, v Sheikh Ali Akhtar et al., Appellants. [878 NYS2d 59]—

Order, Supreme Court, Bronx County (Dianne T. Renwick, J.), entered on or about March 20, 2008, which denied defendants' motion for summary judgment dismissing the complaint for lack of a serious injury as required by Insurance Law § 5102 (d), affirmed, without costs.

Defendants' examining physician noted limitations in range of motion with respect to plaintiff June's left knee and lumbar spine and with respect to plaintiff Smalls' right shoulder and cervical and lumbar spines, and plaintiffs' MRI results showed disc herniations and bulges, a tear to June's left meniscus, and a labral tear in Smalls' right shoulder. The cited impairments are consistent with plaintiffs' description that June hit his left knee against the dashboard, and that Smalls' upper body hit the steering wheel, when defendants' car collided with them, and the doctor's notes and the MRI results support a finding of serious injury within the meaning of Insurance Law § 5102 (see Guerrero v Bernstein, 57 AD3d 845 [2008]; Noriega v Sauerhaft, 5 AD3d 121, 122 [2004]).

In the circumstances presented, particularly the fact that plaintiffs were relatively young (June was 31 years old and Smalls 25 at the time of the accident), defendants' claim that the abnormal MRI findings and restricted ranges of motion were due to degenerative changes unrelated to the accident requires further elaboration to satisfy defendants' burden on the motion, to establish prima facie entitlement to summary judgment (see Coscia v 938 Trading Corp., 283 AD2d 538 [2001]). Concur—Gonzalez, P.J., Moskowitz, DeGrasse and Freedman, JJ.

McGuire, J., dissents in a memorandum as follows: I disagree with the majority's conclusion that the order denying defendants' motion for summary judgment dismissing the complaint should be affirmed. Accordingly, I respectfully dissent.

Plaintiffs were the driver and passenger of a vehicle involved in a motor vehicle accident on November 28, 2004 with a vehicle owned and operated by defendants. Plaintiffs commenced this action against defendants seeking to recover damages; June alleged that he sustained injuries to his left knee and the cervical and lumbar portions of his spine, and Smalls alleged that he

sustained injuries to his right shoulder and the cervical and lumbar portions of his spine. Defendants moved for summary judgment dismissing the complaint in its entirety, arguing that neither of the plaintiffs sustained a "serious injury" under Insurance Law § 5102 (d). Notably, defendants asserted that both plaintiffs had preexisting conditions and that defendants' alleged negligence was not a proximate cause of the injuries of either of plaintiffs.

In support of their motion, defendants submitted the affirmation of a radiologist who reviewed MRI films of June's spine taken on December 18, 2004, approximately three weeks after the accident. The radiologist stated that "Review of the lumbar spine MRI examination performed three weeks following the accident reveals desiccation at the L5-S1 intervertebral disc level. This is a drying out of disc material, a degenerative process, which could not have occurred in less than three [weeks] time and clearly predates the 11/28/04 accident. Bulging at this level is seen. Bulging is not a traumatic abnormality. It is degeneratively induced, related to ligamentous laxity. No osseous, ligamentous, or intervertebral disc abnormalities are seen attributable to the 11/28/2004 accident. No post-traumatic changes are seen." With respect to the MRI films of June's cervical spine, the radiologist stated that the films showed "cervical straightening, a nonspecific finding, frequently related to patient position and comfort for the examination," and that "[n]o recent or post-traumatic changes" were present.

The radiologist also reviewed MRI films of June's left knee taken approximately one month after the accident. Her review of those films "reveale[d] [a] grade II mucoid degenerative signal change in the posterior horn of the medial meniscus. As the name implies, this is a[n] intrasubstance, degenerative process without traumatic basis or causal relationship to the 11/28/04 accident. The chronicity is further evident by the associated out-pouching of the synovial lining, the parameniscal cyst which is indicative of a long term process."

An orthopedic surgeon examined June at defendants' behest. The surgeon opined, among other things, that June's spinal condition was the result of degenerative changes. The surgeon also opined that June did not suffer from any limitation in the range of motion in his cervical spine, had only minor limitations in the range of motion in his lumbar spine and an approximately 40% limitation in the range of motion in his left knee.

The radiologist also reviewed MRI films of Smalls' spine taken on December 18, 2004. With respect to Smalls' cervical spine, the radiologist averred that the MRI films "reveale[d] desicca-

tion at the C4-5 and C5-6 intervertebral disc levels. This is a drying out of disc material, a degenerative process, which could not have occurred in less than three [weeks] time. Bulging is seen at the C5-6 intervertebral disc level. Bulging is not a traumatic abnormality. It is related to ligamentous laxity. No osseous, ligamentous, or intervertebral disc abnormalities are seen attributable to the 11/28/2004 accident. No post-traumatic changes are seen." With respect to the films of Smalls' lumbar spine, the radiologist concluded that "[n]o post-traumatic abnormalities [we]re seen" and that the lumbar spine structure was "entirely normal." After reviewing MRI films of Smalls' right shoulder taken approximately eight weeks after the accident, the radiologist stated that the shoulder was "entirely normal" and no "post-traumatic changes" were noticed.

The orthopedic surgeon also examined Smalls. The surgeon determined that Smalls had limitations in the range of motion in both the cervical and lumbar portions of his spine, and a limitation in the range of motion of his right shoulder. The surgeon opined that the limitations in the range of motion Smalls exhibited in his spine were "grossly out of context from what is seen by objective MRI evaluation and is more likely a non-organic finding"; the physician also noted that Smalls drove from Georgia to New York City for the evaluation and that such a trip "would be inconsistent with someone who has severe ongoing neck and lower back symptoms[, and that Smalls] is . . . well-developed, quite muscular, and this is also inconsistent with a claim of significant disability or ongoing pain."

With respect to the limitation in the range of motion in Smalls' right shoulder, the surgeon stated that a similar limitation in Smalls' left shoulder, which was not injured in the accident, indicated that the limitations in the range of motion in the shoulders were based on Smalls' "poor effort." The surgeon also stated that no substantial injury to the right shoulder was caused by the accident—Smalls did not exhibit traditional symptoms of a shoulder injury immediately after the accident, the MRI films of his right shoulder taken approximately eight weeks after the accident did not indicate any significant injury to that shoulder, and a surgical procedure on that shoulder, performed approximately four months after the accident, revealed that his rotator cuff was intact and that the torn labrum that was repaired during the surgery was "an anatomic variant" that is considered to be a congenital condition.

In opposition, June submitted the affirmation of a radiologist who reviewed the previously noted MRI films of June's spine and left knee. The radiologist concluded that June sustained a

"Focal Central Herniation at L5-S1." With respect to June's left knee, the radiologist saw an "(a) Signal in the posterior horn of the Medial Meniscus, consistent with an intra meniscal tear; (b) Small popliteal cyst posteriorly which can be associated with Internal derangement of left knee." The radiologist stated that the disc herniation and knee injury "appear[ed] to be of non [sic] long-standing duration," and opined that those injuries were "traumatically related" to the accident.

June also submitted the affirmation of the orthopedic surgeon who operated on his left knee in 2005. The surgeon averred that June "suffered a meniscal injury with resultant synovitis and scar tissue formation in the left knee when he was involved in a motor vehicle accident on November 28, 2004. The patient suffers from continued deconditioning, stiffness, and weakness of the left lower extremity. The current conditions and the initial injury are causally related to [the] motor vehicle accident." The surgeon also averred that, while the physician who authored the MRI report based on the films of June's left knee believed that June suffered a torn meniscus, June actually suffered a stretched meniscus.

Smalls submitted the affirmation of a radiologist who reviewed the MRI films of his right shoulder. The radiologist stated that Smalls sustained a labral tear and effusion that "appear to be of non [sic] long-standing duration . . . [and] were traumatically related" to the accident. Smalls also submitted the affirmation of an orthopedic surgeon who operated on his right shoulder in 2005. The surgeon averred that Smalls sustained minor limitations in the range of motion in his right shoulder—10 degrees of flexion, 15 degrees of abduction and 5 degrees of external rotation—due to a labral tear that was caused by the accident.

Defendants made a prima facie showing of entitlement to judgment as a matter of law dismissing June's claims related to his left knee and lumbar spine on the ground that any abnormalities to those portions of his body were not caused by the accident. Defendants adduced expert evidence that June experienced desiccation, i.e., drying out of disc material, at the L5-S1 intervertebral disc level, which defendants' radiologist classified as a degenerative process that could not have occurred in the three-week period between the accident and the date the MRI films of June's spine were taken. Defendants also adduced expert evidence that a degenerative condition was present in June's left knee. Thus, defendants' radiologist affirmed that the MRI of June's left knee, taken approximately one month after the accident, "reveale[d] [a] grade II mucoid degenerative signal

change in the posterior horn of the medial meniscus. As the name implies, this is a[n] intrasubstance, degenerative process without traumatic basis or causal relationship to the 11/28/04 accident. The chronicity is further evident by the associated out-pouching of the synovial lining, the parameniscal cyst which is indicative of a long term process." The burden therefore shifted to June to adduce evidence addressing defendants' evidence that degenerative conditions were present in his spine and left knee (*see Valentin v Pomilla*, 59 AD3d 184 [2009]; *Ronda v Friendly Baptist Church*, 52 AD3d 440, 441 [2008]; *Becerril v Sol Cab Corp.*, 50 AD3d 261, 261-262 [2008]; *see also Brewster v FTM Servo, Corp.*, 44 AD3d 351, 352 [2007]; *Shinn v Catanzaro*, 1 AD3d 195 [2003]).

In opposition, June failed to raise a triable issue of fact because neither of his experts addressed defendants' expert evidence that June suffered from degenerative conditions in his lumbar spine and left knee (*see e.g. Valentin, supra*; *Eichinger v Jone Cab Corp.*, 55 AD3d 364 [2008]; *Reyes v Esquilin*, 54 AD3d 615 [2008]; *Becerril, supra*; *see also Charley v Goss*, 54 AD3d 569 [2008], *affd* 12 NY3d 750 [2009]; *Lattan v Gretz Tr. Inc.*, 55 AD3d 449 [2008]; *Page v Rain Hacking Corp.*, 52 AD3d 229 [2008]; *Ronda, supra*).

Defendants are also entitled to summary judgment dismissing June's claim with respect to alleged injuries to his cervical spine. Defendants adduced expert evidence that June did not sustain an injury to that portion of his spine as a result of the accident. However, neither of June's experts addressed the condition of his cervical spine.

Defendants also made a prima facie showing of entitlement to judgment as a matter of law dismissing Smalls' claim related to his right shoulder on the ground that any injuries to that shoulder were not caused by the accident. Defendants adduced expert evidence that the torn labrum in Smalls' right shoulder was "an anatomic variant" that is considered a congenital condition. In opposition, Smalls failed to raise a triable issue of fact. Neither of Smalls' experts addressed defendants' expert evidence that the torn labrum in his right shoulder was a congenital condition and was not caused by the accident (*see e.g. Eichinger, supra*; *Reyes, supra*; *see also Page, supra*). While Smalls' orthopedic surgeon did aver that the accident caused that tear, the surgeon did not address the points made by defendants' orthopedic surgeon. Specifically, defendants' expert stated that the location of the tear was not an area of the labrum that would typically tear as a result of a traumatic event and that the area of the tear was "consistent with a sub labral hole

which is an anatomic variant and can typically be seen during a routine shoulder arthroscopy outside the context of any traumatic injury and is felt to be a congenital finding."

Smalls also failed to raise a triable issue of fact with respect to his claim based on injuries to his spine. In opposition to defendants' prima facie showing that no injuries to the cervical and lumbar portions of Smalls' spine were caused by the accident, neither of Smalls' experts offered an opinion regarding the condition of his spine.

The majority asserts that "[i]n the circumstances presented, particularly the fact that plaintiffs were relatively young (June was 31 years old and Smalls 25 at the time of the accident), defendants' claim that the abnormal MRI findings and restricted ranges of motion were due to degenerative changes unrelated to the accident requires further elaboration to satisfy defendants' burden on the motion, to establish prima facie entitlement to summary judgment." Unsurprisingly, the majority cites no authority supporting its implicit conclusion that on account of these respective ages it is unlikely that plaintiffs suffered from degenerative changes.[1] Nor does it cite to anything in the record that supports that implicit conclusion. Of course, the members of this panel are not competent to opine about whether, the extent to which or the frequency with which individuals between the ages of 25 and 31 suffer from degenerative conditions. In opposition to defendants' expert evidence stating that both plaintiffs suffered from degenerative conditions, it was incumbent upon plaintiffs to offer expert medical evidence raising a triable issue of fact. They failed to do so, we cannot properly cure their failure and we should reverse.

In light of my conclusion that the complaint should be dismissed for the reasons stated above, I need not and do not

---

1. Although the majority cites *Coscia v 938 Trading Corp.* (283 AD2d 538 [2001]), *Coscia* does not remotely support the majority's position. The decision, in its entirety, reads as follows: "The Supreme Court properly denied the defendants' motion for summary judgment. In support of their motion, the defendants submitted evidence that the plaintiff Phyllis Coscia was suffering from restrictions of motion in her lumbar spine. Furthermore, the defendants submitted contradictory proof as to whether the injured plaintiff's lumbar spine condition was caused by the subject accident or a degenerative disease (*see, Julemis v Gates,* 281 AD2d 396; *DeVeglio v Oliveri,* 277 AD2d 345). Accordingly, the defendants failed to establish a prima facie case that the injuries allegedly sustained by Phyllis Coscia were not serious within the meaning of Insurance Law § 5102 (d) (*see, Mariaca-Olmos v Mizrhy,* 226 AD2d 437; *Mendola v Demetres,* 212 AD2d 515). Under these circumstances, it is not necessary to consider whether the plaintiffs' papers in opposition to the defendants' motion were sufficient to raise a triable issue of fact (*see, Chaplin v Taylor,* 273 AD2d 188; *Mariaca-Olmos v Mizrhy, supra*)."

pass on defendants' additional arguments. I note, however, that defendants make persuasive arguments that the 90/180 claims of both plaintiffs should be dismissed, but the majority does not discuss those arguments.[2]

---

2. The majority's failure to grant defendants partial summary judgment dismissing Smalls' claims for injuries to his spine is inexplicable. In opposition to defendants' prima facie showing that no injuries to Smalls' spine were caused by the accident, Smalls submitted no expert evidence regarding the condition of his spine.