■ DOROTHY VAUGHAN, Respondent, v LEIGHTON LEON et al., Appellants. [943 NYS2d 63]—

Order, Supreme Court, Bronx County (Alison Y. Tuitt, J.), entered August 6, 2010, which denied defendants' motion for summary judgment dismissing the complaint, modified, on the law, to dismiss the 90/180-day category of plaintiff's Insurance Law § 5102 (d) claim, and otherwise affirmed, without costs.

In this action for personal injuries plaintiff alleges that she sustained a serious injury as a result of a car accident that oc-

curred on June 30, 2007 at the intersection of East 223rd Street and White Plains Road, in the Bronx. Defendant Leon, a taxi driver, testified at his deposition that he was traveling northbound on White Plains road at approximately 20 miles per hour when he reached the intersection of East 223rd. At that point, a truck was to defendant driver's left on East 223rd and was obscuring his view of that street. Plaintiff testified at her deposition that she was stopped at the stop sign on East 223rd before proceeding to inch her way into the intersection. She was traveling at a speed of approximately 5 to 10 miles per hour when her car collided with defendant's car. The following day plaintiff went to the emergency room at Jacobi Hospital complaining of back and right shoulder pain. She was examined and released that day. Approximately a week later, on July 9, 2007, plaintiff was examined by Dr. Gautam Khakhar and continued to see him for five months following the accident, during which time she underwent physical therapy for her back, neck, and right shoulder.

Plaintiff commenced this action alleging that she sustained a serious injury under Insurance Law § 5102 (d). Defendants subsequently moved for summary judgment dismissing the complaint on the grounds that plaintiff was negligent as a matter of law because she failed to yield the right of way at the intersection; and on the grounds that plaintiff failed to establish that she sustained a serious injury. The motion court denied defendants' motion in its entirety.

Notwithstanding that plaintiff's approach into the intersection was regulated by a stop sign and defendant driver's approach was not regulated by a traffic control device, issues of fact about plaintiff stopping at the stop sign and which vehicle entered the intersection first preclude a finding as a matter of law that plaintiff's conduct was the sole proximate cause of the accident (see Rivera v Berrios Trans Serv. Inc., 64 AD3d 416 [2009]). Further, plaintiff's testimony that she was traveling between 5 and 10 miles per hour and that the impact of the two vehicles was "very heavy" presents issues of fact whether defendant driver was negligent (Nevarez v S.R.M. Mgt. Corp., 58 AD3d 295, 299 [2008]).

Although defendants established prima facie that plaintiff did not sustain a serious injury within the meaning of Insurance Law § 5102 (d), plaintiff raised sufficient issues of fact to warrant denial of summary judgment. On review of plaintiff's MRI films, defendants' radiologist noted that there were disc bulges that were "chronic and degenerative in origin" and that there was "no evidence of acute traumatic injury to the lumbar spine

such as vertebral fracture, asymmetry of the disc spaces, ligamentous tear or epidural hematoma." These findings establish prima facie that any injury to plaintiff's lumbar spine was not causally related to the accident (*see Depena v Sylla*, 63 AD3d 504 [2009], *lv denied* 13 NY3d 706 [2009]). The burden then shifted to plaintiff to raise a triable issue of fact.

In opposition to defendants' motion, plaintiff submitted the affirmation of her treating physician, Dr. Khakhar, who first saw her nine days after the accident. He concluded that plaintiff's injuries were caused by the accident. Dr. Khakhar based this conclusion on the MRI report of the lumbrosacral spine and right shoulder taken on July 16, 2007,[1] electrodiagnostic testing, the patient's medical records, and objective clinical examinations of plaintiff, which revealed a painful and limited range of motion when compared to normal ranges, that began a week after the accident and continued for a period of approximately five months thereafter. This submission, which was based on objective findings by the doctor, as well as plaintiff's subjective complaints, was sufficient to substantiate a claim of serious injury (*Yuen v Arka Memory Cab Corp.*, 80 AD3d 481 [2011]).

Although the dissent makes much of plaintiff's failure to annex the MRI reports, Dr. Khakhar affirmed that he reviewed them, and then made his own clinical findings based on the history provided by plaintiff and his education, training and experience (*Baez v Boyd*, 90 AD3d 524 [2011] [plaintiff raised an issue of fact by submitting the affirmed report of his treating orthopedist, who had reviewed the MRI films]). Moreover, although Dr. Khakhar did not explain what was in the MRI report or whether the MRI report he reviewed was affirmed, Dr. Khakhar's report itself was affirmed and is sufficient to raise an issue of fact. The dissent cites no cases in support of its argument that plaintiff's doctor must describe the specific contents of the MRI report for plaintiff to defeat a summary judgment motion.

Furthermore, although Dr. Khakhar did not expressly reject defendants' expert's conclusion that the injuries were degenerative in origin, by attributing the injuries to a different, yet equally plausible cause, plaintiff raised a triable issue of fact

---

1. Dr. Khakhar did not specify who wrote the MRI reports, although the date of the MRI was the same as the date reflected in the report of defendants' expert, Dr. Berkowitz. Contrary to the dissent's argument, this does not invalidate Dr. Khakhar's affirmation. Even if the doctor relied on the same films as defendants' expert, they could reach different conclusions on causation.

(*see Yuen*, 80 AD3d at 482; *Linton v Nawaz*, 62 AD3d 434, 439-440 [2009], *affd on other grounds* 14 NY3d 821 [2010]). Although "[a] factfinder could of course reject this opinion" (*Perl v Meher*, 18 NY3d 208, 219 [2011]), we cannot say on this record, as a matter of law, that plaintiff's injuries had no causal connection to the accident.

The dissent unpersuasively argues that the Court of Appeals' brief references to *Pommells v Perez* (4 NY3d 566 [2005]) in the *Perl* opinion mandate a ruling in defendants' favor unless plaintiff's submissions specifically explain why the conclusion of degeneration by defendants' doctors is incorrect; this is not what *Perl* holds. Rather, the Court in *Perl* concluded that the plaintiff's contrary evidence presented on a summary judgment motion, even if "hardly powerful," merely must be sufficient to raise an issue of fact (*Perl*, 18 NY3d at 219). In fact, the *Perl* opinion focuses on whether the numerical measurements of range of motion were contemporaneous, which is not the central issue in this case. As the dissent notes, the record here does not contain as much detail in the treating physician's affirmation as was contained in the *Perl* affirmation, but such detail is not required. Plaintiff, at her deposition, explained that she had not previously been injured before this accident, and Dr. Khakhar noted she was acutely symptomatic when he saw her about a week after the accident. Here, this information, combined with Dr. Khakhar's affirmation and conclusion as to causation, contained sufficient detail. The dissent's suggestion that there is a specific catechism that plaintiff's doctor must recite ignores the central purpose of a summary judgment motion, which is to determine whether there are factual issues to be resolved at trial.

Nor is *Carrasco v Mendez* (4 NY3d 566 [2005]), one of the three appeals decided in *Pommells*, similar to plaintiff's case, as the dissent contends.[2] Carrasco's original doctor concluded in his final report that Carrasco's pain was related to a prior degenerative condition, thereby agreeing with the defendant's analysis (*id.* at 579-580). Dr. Khakhar, however, found just the opposite with regard to plaintiff, and concluded that her injuries were casually connected to the accident. The dissent incorrectly argues that *Carrasco* turns on the lack of detail in the doctor's conclusions. However, the *Carrasco* Court found that the

---

**2.** We need not analyze the specific facts of all the cases cited in the dissent's footnote 8, because, under *Perl*, which is the most recent controlling authority, plaintiff's submissions are sufficient. Moreover, as the dissent concedes, other precedents of this Court support the conclusion reached here (*see e.g. Yuen v Arka Memory Cab Corp.*, 80 AD3d 481 [2011], *supra*).

plaintiff "did not refute defendant's evidence of a preexisting degenerative condition" because plaintiff's second doctor's report "was entirely consistent with those formations identified by the MRI" and with the conclusion of the defendant's expert (*id.* at 580).

The court should have dismissed plaintiff's 90/180-day claim. Plaintiff's deposition testimony that she was confined to her home for only one month after the accident and her treating physiatrist's statement that she was "partially incapacitated" are insufficient to raise the inference that plaintiff was prevented from performing her usual and customary activities for at least 90 of the 180 days following the accident (Insurance Law § 5102 [d]; *see Williams v Baldor Specialty Foods, Inc.*, 70 AD3d 522, 523 [2010]; *Valentin v Pomilla*, 59 AD3d 184, 186-187 [2009]). Concur—Saxe, Moskowitz and Richter, JJ.

Andrias, J.P., and Friedman, J., dissent in part in a memorandum by Friedman, J., as follows: Plaintiff claims to have suffered injuries to her lumbar spine as a result of the subject motor vehicle accident. In support of their motion for summary judgment, defendants submitted competent medical expert evidence, in the form of an affirmed MRI report, explaining in detail why the reporting radiologist concluded that plaintiff's lumbar spine exhibited changes due to preexisting degeneration rather than traumatic injury. In opposition, not only did plaintiff fail to submit any report by a radiologist, the physiatrist whose affirmation she submitted completely ignored the likelihood raised by the defense radiologist that plaintiff's lumbar deficits were the result of degeneration. Moreover, the two other medical reports plaintiff submitted—putting aside that neither one was sworn or affirmed—both explicitly acknowledged (presumably based on a radiological report absent from the record) that the lumbar spine MRI evidenced "degenerative changes," and drew no connection between plaintiff's condition and the accident.

Because plaintiff submitted no evidence specifically addressing and rebutting the view of the defense radiologist that plaintiff's deficits were the result of a degenerative condition that preexisted the accident, under precedent of the Court of Appeals and of this Court, defendants are entitled to summary judgment dismissing the complaint insofar as it seeks recovery for a "permanent consequential limitation of use of a body organ or member" or "significant limitation of use of a body function or system" comprising a "serious injury" under the No-Fault Law (Insurance Law § 5102 [d]). As more fully discussed below, the Court of Appeals' recent decision in *Perl v Meher* (18 NY3d

208 [2011]) does not support the majority's result because, unlike here, the plaintiff's experts in *Perl* specifically addressed the defense theory that the MRI demonstrated degenerative etiology. Since I agree with the majority that the claim under the 90/180-day provision of section 5102 (d) should have been dismissed, I would reverse and grant in its entirety defendants' motion for summary judgment dismissing the complaint. To the extent the majority does otherwise, I respectfully dissent.

In my view, the medical evidence concerning the etiology of plaintiff's lumbar spine condition suffices, by itself, to require the dismissal of her claim under the "permanent consequential limitation" and "significant limitation" prongs of the No-Fault Law's definition of "serious injury." Accordingly, I will restrict my discussion of the medical evidence to the material bearing on the origin of the spinal condition.[1]

Plaintiff was involved in a two-car collision on June 30, 2007, when she was 54 years old.[2] She did not have any physical complaints immediately after the accident. The next day, she went to an emergency room because she "felt a little pain" in her back and right shoulder. The hospital told plaintiff that it was "just a sprain," gave her Motrin and sent her home, without taking any X rays. On July 9, 2007, she first visited Gautam K. Khakhar, M.D., a physiatrist, who found her to be "partially incapacitated," started her on a course of physical therapy, referred her to an orthopedist for an electrodiagnostic test, and ordered an MRI of, inter alia, the lumbosacral spine. Dr. Khakhar subsequently referred plaintiff to a pain management specialist. Plaintiff treated with Dr. Khakhar until December 17, 2007, when he determined that she had reached "maximum medical improvement from conservative management." More than a year and a half later, on August 31, 2009 (after this action had been commenced), plaintiff again visited Dr. Khakhar, who examined her, referred her to physical therapy and advised her to consult a spinal surgeon. Plaintiff was examined by Dr. Khakhar once again on October 26, 2009 (after defendants moved for summary judgment).

In support of their motion for summary judgment, defendants

---

1. In addition, while plaintiff alleges that she felt pain in her right shoulder after the accident, the only permanent injury she claimed in opposing the summary judgment motion was to her lumbar spine. She made no claim, and offered no evidence, that the alleged shoulder injury was permanent. Accordingly, there is no need to discuss the medical evidence relating to the alleged shoulder injury.

2. According to the report of a physical examination of plaintiff conducted on September 7, 2007 (about two months after the accident), plaintiff was then five feet, one inch tall and weighed 160 pounds.

submitted, among other things, an affirmed MRI report, dated January 6, 2009, by Jessica F. Berkowitz, M.D., a radiologist, based on the MRI of plaintiff's lumbar spine that was made on July 16, 2007 (16 days after the accident). In relevant part, Dr. Berkowitz reported:

"**IMPRESSION:** Diffuse disc bulge, L5-S1. Disc bulges are chronic and degenerative in origin. There is no evidence of acute traumatic injury to the lumbar spine such as vertebral fracture, asymmetry of the disc spaces, ligamentous tear or epidural hematoma.

"**CAUSAL RELATIONSHIP:** Evaluation of this MRI examination reveals no causal relationship between the claimant's alleged accident and the findings on the MRI examination."

In opposing the summary judgment motion, plaintiff did not submit a report by any radiologist who had examined the MRI of her lumbar spine. She did submit an affirmation by Dr. Khakhar, plaintiff's treating physiatrist, but Dr. Khakhar did not claim to have reviewed the MRI or even to be qualified to undertake such a review. While Dr. Khakhar stated in his affirmation that "MRI reports of the lumbosacral spine and right shoulder taken on July 16, 2007 are annexed hereto as Exhibit 'A,'" in the record before us, no such reports are annexed to his affirmation. Neither does Dr. Khakhar's affirmation offer any substantive description of the contents of the MRI reports or explain how those reports support his conclusion that plaintiff's symptoms were "a result of the [subject] motor vehicle accident."

The report on the MRI of the lumbosacral spine referred to by Dr. Khakhar is presumably the same one mentioned in plaintiff's counsel's opposition affirmation. Specifically, counsel's affirmation makes reference to "Dr. Mark Frelich's impression of an 'MR Scan of the Lumbosacral spine,'" states that Dr. Frelich's report is annexed as "Plaintiff's Exhibit 'D,'" and quotes a sentence said to be from that report.[3] However, there is no MRI report by a Dr. Mark Frelich, or by any physician having a similar name, to be found anywhere in the record.[4]

Plaintiff submitted two reports by physicians other than Dr. Khakhar, but neither of these reports was sworn or affirmed,

---

**3.** The sentence purportedly quoted from Dr. Frelich's report ("Bulging disc L5-S1 with extension into right and left L5-S1 Neural Foramina without compromise of the dorsal root ganglia") says nothing about the possible cause of the finding.

**4.** The record does include an "Exhibit D" to plaintiff's counsel's affirmation, but this document is a report by Dr. Khakhar based on the physical examination of plaintiff he conducted on October 26, 2009.

neither was prepared by a radiologist, and neither offered any opinion on the cause of plaintiff's symptoms. Moreover, far from contradicting the view of the defense radiologist that plaintiff's lumbar spine exhibited a preexisting degenerative condition, both of these reports refer to an MRI report outside the record (possibly that of Dr. Frelich) that actually *confirms* the degenerative etiology of plaintiff's symptoms. Thus, the report of Dov J. Berkowitz, M.D., an orthopedist, dated August 2, 2007, states: "At this point, MRI is positive for a disc protrusion *with some degenerative changes*" (emphasis added). Similarly, the report of Brian Haftel, M.D., a pain management specialist, dated September 7, 2007, states that a report on the MRI of plaintiff's lumbar spine noted "degenerative changes noted at L4-5 articulating facet joints leading to hypertrophy of the ligamentum flavum," "[d]essicative changes . . . at the L5/S1 level consistent with degenerative change," and "degenerative changes of the articulating facets" of L5/S1. Aside from these references to MRI evidence of degenerative changes, neither the orthopedist, Dr. Berkowitz, nor the pain management specialist, Dr. Haftel, offered any opinion as to the cause of plaintiff's lower-back symptoms. Notably, the reports of both Dr. Berkowitz and Dr. Haftel are addressed to Dr. Khakhar, indicating that Dr. Khakhar referred plaintiff to the two other physicians.

In the end, the only evidence plaintiff submitted concerning the origin of her symptoms and impairments were Dr. Khakhar's bare assertions in his affirmation to the effect that those symptoms "were caused by the motor vehicle accident of June 30, 2007."[5] Dr. Khakhar gave no account of the basis on which he reached this conclusion. Although he claimed to have reached his conclusions based upon, inter alia, an MRI report on the lumbosacral spine (which, to reiterate, was not annexed to his report), he did not explain how anything in that unsubmitted MRI report supported his attribution of the impairments to an accident. Equally important, he made no mention at all of the defense radiologist's view that the condition revealed by the MRI of the lumbar spine was a preexisting degenerative condition. Dr. Khakhar simply ignored the possibility that plaintiff's symptoms had a degenerative etiology, notwithstanding that the reports of two physicians to whom he referred her both make reference to evidence that she suffers from a degenerative condition.

The problem with plaintiff's opposition to the summary judg-

---

5. In addition to Dr. Khakhar's affirmation, plaintiff submitted two affirmed examination reports by the same physician, but neither of these examination reports said anything about etiology.

ment motion in this case is that, while Dr. Khakhar claimed to rely on an MRI report by an unidentified physician, plaintiff not only failed to make that MRI report part of the record, Dr. Khakhar completely failed both to describe the contents of that report (other than to say it concerned the lumbosacral spine) and to explain how that unseen and undescribed report supported his conclusion that plaintiff's symptoms "result[ed]" from the subject accident.[6] Further, while, under *Perl* (as more fully discussed below), it would have been sufficient for Dr. Khakhar to address Dr. Jessica Berkowitz's finding of a degenerative condition by explaining that the condition was "asymptomatic" until exacerbated by the accident, *Dr. Khakhar's affirmation contains no such statement*.[7] Again, as I will explain below, even under *Perl*, where (as here) the defense has made a prima facie case that the symptoms result from preexisting degeneration, a plaintiff cannot simply rely on a treating physician's unsupported assertion that the symptoms were somehow causally connected to the accident. This is all that plaintiff presented here.

In sum, in response to defendants' expert radiological evidence attributing plaintiff's impairments to a preexisting degenerative condition, plaintiff submitted nothing but the boilerplate, unexplained and unsupported assertion of her treating physiatrist that the impairments resulted from the subject accident. Dr. Khakhar, plaintiff's physiatrist, utterly failed to address the view of the defense radiologist that plaintiff was simply experiencing the effects of the degenerative changes that had accumulated over the 54 years of her life preceding the accident. Indeed, Dr. Khakhar ignored the well-supported opinion of the defense radiologist even though the reports of the orthopedist and pain specialist to whom Dr. Khakhar referred plaintiff made reference to an MRI report (not submitted by plaintiff) that evidently supports the same view. Under controlling case law,

---

**6.** Plaintiff's failure to submit the MRI report with Dr. Khakhar's affirmation, and Dr. Khakhar's failure to discuss the contents of that MRI report in any substantive way, are presumably related to the fact that the MRI report discussed in the reports of plaintiff's orthopedist and pain management specialist actually corroborates the view that plaintiff had a preexisting degenerative condition.

**7.** The majority seems to take the position that the combination of plaintiff's statement that "she had not previously been injured before this accident" with Dr. Khakhar's observation of symptoms after the accident is equivalent to an affirmed statement by a physician that any preexisting condition had been asymptomatic before the accident. However, even if it is true that plaintiff was not "injured" before the subject accident, that does not necessarily mean that she did not have *symptoms* until the accident occurred. Thus, I do not follow the majority's logic.

the foregoing does not suffice to raise a triable issue in the face of defendants' prima facie showing, through the affirmed MRI report of the defense radiologist, that plaintiff's lumbar spinal condition results from preexisting degenerative disease.

In an action to recover for serious injury under Insurance Law § 5102 (d), where the defendant moves for summary judgment based on detailed and competent medical evidence attributing the alleged injury to a preexisting degenerative condition rather than the accident, the burden shifts to the plaintiff to come forward with competent medical evidence specifically refuting the claimed lack of causal connection to the accident (*see Pommells v Perez*, 4 NY3d 566, 579-580 [2005]). A plaintiff cannot carry this burden simply by offering a conclusory expert opinion that the injuries "were causally related to the accident" without directly addressing the defendant's theory that the injuries resulted from degenerative changes (*see Pommells*, 4 NY3d at 580).

The Court of Appeals' discussion of *Carrasco v Mendez,* one of the three appeals decided in the *Pommells* opinion (cited with approval in *Perl v Meher*, 18 NY3d at 218) illustrates how the rule described above operates in a scenario similar to the one before us. In *Carrasco*, the defendant submitted in support of his summary judgment motion the report of a medical expert who, based on MRIs and other evidence, "concluded that the pain in areas identified as herniated . . . was caused by preexisting and degenerative conditions" (4 NY3d at 579). The defendant also submitted a report by the plaintiff's "original doctor . . . not[ing] . . . that plaintiff's pain was related to a prior condition" (*id.*). In response, the plaintiff offered the report of his treating physician, who "opin[ed] that plaintiff suffered serious and permanent injuries which were causally related to the accident" (*id.* at 579-580). The Court of Appeals held that this did not suffice to defeat the summary judgment motion because "plaintiff did not refute defendant's evidence of a preexisting degenerative condition. To the contrary, the [physician's] report supplied by plaintiff explained that the pain and loss of range of motion in the cervical spine was entirely consistent with those formations identified by the MRI and set forth by [the physicians relied on by the defendant] as related to a degenerative condition. In this case, with persuasive evidence that plaintiff's alleged pain and injuries were related to a preexisting condition, plaintiff had the burden to come forward with evidence addressing defendant's claimed lack of causation. In the absence of any such evidence, we conclude . . . that defendant was entitled to summary dismissal of the complaint" (*id.* at 580).

This Court has summarized the governing principles as follows: "To recover damages for noneconomic loss related to personal injury allegedly sustained in a motor vehicle accident, the plaintiff is required to present nonconclusory expert evidence sufficient to support a finding not only that the alleged injury is 'serious' within the meaning of Insurance Law § 5102 (d), but also that the injury was causally related to the accident. Absent an explanation of the basis for concluding that the injury was caused by the accident, as opposed to other possibilities evidenced in the record, an expert's conclusion that plaintiff's *condition is causally related to the subject accident is mere* speculation, insufficient to support a finding that such a causal link exists" (*Valentin v Pomilla*, 59 AD3d 184, 186 [2009] [internal quotation marks omitted], quoting *Diaz v Anasco*, 38 AD3d 295, 295-296 [2007]). Numerous other decisions issued by this Court in recent years hold to the same effect.[8]

In my view, the foregoing authority—including the decision of the Court of Appeals in *Pommells*, as substantially reaffirmed in *Perl*—requires that defendants be granted summary judgment dismissing the complaint on the ground that plaintiff has failed to address the medical evidence attributing her alleged injuries

---

**8.** *See e.g. Arroyo v Morris*, 85 AD3d 679 (2011); *Soho v Konate*, 85 AD3d 522 (2011); *Feliz v Fragosa*, 85 AD3d 417 (2011); *Shu Chi Lam v Wang Dong*, 84 AD3d 515 (2011); *Johnson v Singh*, 82 AD3d 565 (2011); *Lemos v Giacomo Mgt., Inc.*, 82 AD3d 602 (2011); *Porter v Bajana*, 82 AD3d 488 (2011); *Riviello v Kambasi*, 82 AD3d 543 (2011); *Quinones v Ksieniewicz*, 80 AD3d 506 (2011); *Rodriguez v Freight Masters, Inc.*, 80 AD3d 452 (2011); *Thomas v Booker*, 76 AD3d 456 (2010); *Turner v Benycol Transp. Corp.*, 78 AD3d 506 (2010); *Nieves v Castillo*, 74 AD3d 535 (2010); *Perez v Giouroukos*, 75 AD3d 488 (2010); *DeJesus v Cruz*, 73 AD3d 539 (2010); *Weinberg v Okapi Taxi, Inc.*, 73 AD3d 439 (2010); *Barner v Shahid*, 73 AD3d 593 (2010); *Cabrera v Gilpin*, 72 AD3d 552 (2010); *Kerr v Klinger*, 71 AD3d 593 (2010); *Amamedi v Archibala*, 70 AD3d 449 (2010), *lv denied* 15 NY3d 713 (2010); *D'Ariano v Meldish*, 68 AD3d 640 (2009); *Lopez v Abdul-Wahab*, 67 AD3d 598 (2009); *Cruz v Lugo*, 67 AD3d 495 (2009); *Moses v Gelco Corp.*, 63 AD3d 548 (2009); *Depena v Sylla*, 63 AD3d 504 (2009), *lv denied* 13 NY3d 706 (2009); *Jean v Kabaya*, 63 AD3d 509 (2009); *Marsh v City of New York*, 61 AD3d 552 (2009); *Nickolson v Albishara*, 61 AD3d 542 (2009); *Delfino v Luzon*, 60 AD3d 196 (2009); *Colon v Tavares*, 60 AD3d 419 (2009); *Russell v Mitchell*, 59 AD3d 355 (2009); *Sky v Tabs*, 57 AD3d 235 (2008); *Ronda v Friendly Baptist Church*, 52 AD3d 440 (2008); *Rodriguez v Abdallah*, 51 AD3d 590 (2008); *Becerril v Sol Cab Corp.*, 50 AD3d 261 (2008); *Santana v Khan*, 48 AD3d 318 (2008); *Yagi v Corbin*, 44 AD3d 440 (2007); *Johnson v Marriott Mgt. Servs. Corp.*, 44 AD3d 450 (2007), *lv denied* 10 NY3d 716 (2008); *Brewster v FTM Servo, Corp.*, 44 AD3d 351 (2007); *Davis v Giria*, 40 AD3d 272 (2007); *Otero v 971 Only U, Inc.*, 36 AD3d 430 (2007); *Henry v Rivera*, 34 AD3d 352 (2006); *Style v Joseph*, 32 AD3d 212 (2006); *Agard v Bryant*, 24 AD3d 182 (2005); *Simms v APA Truck Leasing Corp.*, 14 AD3d 322 (2005); *Blackwell v Fraser*, 13 AD3d 157 (2004); *Wallingford v Perez*, 11 AD3d 390 (2004).

to degenerative disease. I see no principled basis for departing from a rule so well established and so well founded in reason and fairness. To the extent certain decisions of this Court have departed from this rule (*see e.g. Yuen v Arka Memory Cab Corp.*, 80 AD3d 481 [2011] [cited by the majority]; *Jacobs v Rolon*, 76 AD3d 905 [2010]; *Linton v Nawaz*, 62 AD3d 434 [2009], *affd on other grounds* 14 NY3d 821 [2010] [cited by the majority]; *June v Akhtar*, 62 AD3d 427 [2009]; *Glynn v Hopkins*, 55 AD3d 498 [2008]), I do not believe that we should follow these decisions, as they are contrary to the weight of this Court's own authority and, more importantly, contrary to the holding of the Court of Appeals in *Pommells*.

In this case, the only admissible radiology report in the record attributed the observed condition of plaintiff's lumbar spine to degenerative changes. Moreover, two other physician's reports submitted by plaintiff herself, although not admissible because not sworn or affirmed, referred to another radiological report based on the same MRI noting degenerative changes in the lumbar spine.[9] The only expert who attributed plaintiff's impairments to the accident was Dr. Khakhar, who simply asserted that such a causal relationship existed, without explaining his reasoning and, most importantly, without addressing the defense radiologist's view (supported by the reports of his own orthopedic and pain management consultants) that plaintiff was experiencing the effects of degenerative changes. Indeed, Dr. Khakhar did not even claim to have ascertained that plaintiff's symptoms began only after the accident.

The instant case is readily distinguishable from *Perl v Meher* (*supra*), in which the plaintiff's radiologist and treating physician both specifically rebutted the defense radiologist's view that the MRI established that the symptoms were the result of degeneration. The plaintiff's radiologist in *Perl*, "while [acknowledging that] some findings from the MRI 'are consistent with degenerative disease,' [opined that] a single MRI cannot rule out the possibility that 'the patient's soft tissue findings are . . . a result of a specific trauma.' That question, [the plaintiff's] radiologist said, can best be judged 'by the patient's treating physician in conjunction with exam, history and any previous tests' " (18 NY3d at 219). Further, the treating physician in *Perl* opined that the plaintiff's symptoms were "based upon a traumatic event *and not degeneration*" (emphasis added) because he was "asymptomatic before the motor vehicle ac-

---

**9.** The reports of plaintiff's orthopedist and pain management specialist are both dated in 2007 and therefore could not be referring to the report of the defense radiologist, which is dated January 6, 2009.

cident." No such statements specifically denying degenerative etiology appear in Dr. Khakhar's affirmation or in any other document submitted by plaintiff in this case. Again, Dr. Khakhar did not even claim that plaintiff's symptoms did not begin until after the accident.

In asserting that *Perl* is not distinguishable, the majority ignores the fact that the result in *Perl* was based on the affirmed statement by the treating physician that, because the plaintiff " 'had not suffered any similar symptoms before the accident or had any prior injuries/medical conditions that would result in these findings,' the findings were causally related to the accident" (18 NY3d at 219). Again, the record in this case contains no such statement. The majority reads *Perl*'s characterization of the plaintiff's evidence in that case as "hardly powerful" (*id.*) to abolish any requirement that a plaintiff, in opposing summary judgment in a no-fault case, specifically address a defendant's a prima facie showing that the symptoms are attributable to a preexisting degenerative condition. I see no warrant for this reading of *Perl*.

Nor does the majority's attempt to distinguish *Carrasco v Mendez* hold water. There is no indication in the Court of Appeals' decision that the view of the *Carrasco* "plaintiff's original doctor . . . that [his] pain was related to a prior condition" (4 NY3d at 579) was essential to the Court's holding that the defendant in that case was entitled to summary judgment.[10] In *Carrasco*, as here, the plaintiff presented a treating physician's unsupported and unexplained conclusion that the symptoms were " 'a result of the motor vehicle accident' " (*id.*). This was held to be insufficient in *Carrasco*, and nothing in *Perl* indicates that the Court of Appeals has abandoned this holding.[11]

The majority asserts that I "cite[ ] no cases in support of [my] argument that plaintiff's doctor must describe the specific

10. In fact, this case does present a parallel to the view of the "plaintiff's original doctor" in *Carrasco* in that, here, as previously discussed, the reports of plaintiff's orthopedist and pain management specialist both refer to an MRI report that noted the presence of degenerative changes in the lumbosacral spine.

11. The majority also tries to distinguish *Carrasco* based on the Court's statement that the report of plaintiff's second physician (Dr. Lambrakis) " 'was entirely consistent with those formations identified by the MRI' and with the conclusion of the defendant's expert" (quoting 4 NY3d at 580). However, exactly the same could be said here about Dr. Khakhar's report. Just as with Dr. Lambrakis's report in *Carrasco* (which opined that the plaintiff's symptoms in that case were " 'a result of the motor vehicle accident' " [4 NY3d at 579]), the only inconsistency between Dr. Khakhar's report and the MRI report of Dr. Berkowitz was Dr. Khakhar's unexplained, boilerplate conclusion that plaintiff's symptoms were caused by the accident.

contents of the MRI report for plaintiff to defeat a summary judgment motion." As I believe should be clear from the foregoing discussion of the case law, the Court of Appeals has always held to the position—appropriately followed by the weight of authority in this Court—that, in the face of expert evidence attributing a plaintiff's alleged symptoms to a preexisting degenerative condition, the plaintiff must come forward with an expert opinion articulating some reason for attributing the symptoms to the accident. I accept that the reason given need not be a conflicting MRI report, but plaintiff's expert cannot rely on a MRI report to rebut the one submitted by defendants without at least explaining how the contents of plaintiff's MRI report support his conclusion. Here, Dr. Khakhar says he looked at an MRI report, but utterly fails to explain how that report supports his conclusion. Nor does he offer any other explanation—even a statement that the symptoms did not appear until after the accident—for rejecting the view of the defense radiologist that the symptoms resulted from the degenerative condition revealed by the MRI. In the end, as in *Carrasco*, plaintiff here has offered nothing on causation but her treating physician's naked assertion.

The majority distorts my position by asserting that I am "suggest[ing] that there is a specific catechism that plaintiff's doctor must recite." On the contrary, it is my view that the plaintiff's medical expert must provide some substantive explanation—even a weak one—for his or her rejection of the defense expert's view that the symptoms are degenerative in nature. It is the majority that is allowing plaintiff to defeat a well-supported summary judgment motion with nothing more than a boilerplate, uninformative "catechism" over a physician's signature.

For the foregoing reasons, the majority, insofar as it sustains the complaint, erroneously departs from the course charted by the Court of Appeals. I therefore dissent from that aspect of the majority's decision.